### 5814.   CHARLESTON & WESTERN CAROLINA RAILWAY CO. *et al. v.* McELMURRAY.

1. The petition set forth a cause of action, and was not subject to general demurrer.

2. The special demurrer alleging a misjoinder should have been sustained. This court held in *Atlantic Coast Line R. Co.* v. *McElmurray*, 14 *Ga. App.* 196 (80 S. E. 680), that the owner of the track was jointly liable.

with the owner of the train which started the fire, for the latter's negligence. This decision established the joint liability of the two roads for fires caused by the Atlantic Coast Line Railroad Company, and there is no misjoinder as to these fires. The Atlantic Coast Line Railroad Company is not, however, liable for the fires set out by the Charleston & Western Carolina Railway Company, the owner of the track, and here is the misjoinder. Counsel for defendant in error having asked leave (if this should be our judgment) to so amend his petition as to dismiss the Atlantic Coast Line Railroad Company, and thereby to cure this defect, leave to do so is hereby granted under the authority of the Civil Code, § 6205. The defendant in error, however, must pay the costs of the writ of error.

3. The special demurrer as to that part of the petition asking for punitive damages was properly overruled.

4. The other special grounds of the demurrer were without merit.

DECIDED JUNE 28, 1915.

Action for damages; from city court of Richmond county— Judge W. F. Eve. June 9, 1914.

*W. K. Miller,* for plaintiffs in error. *J. C. C. Black Jr.,* contra.

BROYLES, J. The third headnote only needs elaboration. J. R. McElmurray sued the Atlantic Coast Line Railroad Company and the Charleston & Western Carolina Railway Company jointly for damages, and the essential averments of his petition are as follows:

"1. That the defendant the Charleston & Western Carolina Railway Company is a railroad corporation owning and operating a line of railway in said county, and having an office, an agent, and a place of business in the city of Augusta in said county; that the defendant the Atlantic Coast Line Railroad Company is a railroad corporation having an office, an agent, and a place of business in the city of Augusta in said county.

"2. That the plaintiff, at the time of the injuries hereinafter complained of, was, and is now, the owner of a farm of 795 acres, situate in said county and known as 'Goodale farm.'

"3. That the defendant the said Charleston & Western Carolina Railway Company's line of railway traverses petitioner's farm from west to east, a distance of a mile and a half, and then crosses the Savannah river on a bridge in which there is a draw.

"4. That the defendant the said Atlantic Coast Line Railroad Company operates, and did so operate at the time hereinafter stated, its trains over the tracks of the said Charleston & Western Carolina Railway, with the knowledge and consent of said Charleston & Western Carolina Railway Company.

"5. That the principal crop grown on petitioner's farm is hay.

"6. That on the 20th day of November, 1911, an engine being operated by the Charleston & Western Carolina Railway Company on its line of railway, running through said farm, negligently emitted live sparks and cinders, which set fire to the right of way of said Charleston & Western Carolina Railway Company, which said fire was communicated to the farm of petitioner and burned over an area of one acre, on which was growing a native vetch which reseeded itself, and damaged petitioner six dollars, and burned seven large cocks of hay, containing one and° three fourths tons of the value of fifteen dollars per ton; that on the 22d day of November, 1911, an engine being operated by said Charleston & Western Carolina Railway Company on its line of railway, running through said farm, negligently emitted live sparks and cinders, which set fire to the right of way, which said fire was communicated to the land of petitioner, burning over an area of two acres, on which was growing a native vetch which reseeded itself, to the damage of petitioner of twelve dollars; that on the 1st day of December, 1911, an engine being operated by said Charleston & Western Carolina Railway Company on its line of railway, running through said farm, negligently emitted live sparks which set fire to the right of way, which said fire was communicated to the land of petitioner, and burned over an area of ten acres, on which was growing a native vetch which reseeded itself, to the damage of petitioner of six dollars per acre, and consumed six large cocks of hay containing one and one half tons of the value of fifteen dollars per ton, and caused petitioner to expend $2.40 in payment of men to fight said fire; that on December 3, 1911, an engine being operated by said Charleston & Western Carolina Railway Company on its line of railway, running through said farm, negligently emitted live sparks which set fire to the right of way, which said fire was communicated to the land of petitioner, burning over an area of one acre, on which was growing a native vetch which reseeded itself, to the damage of six dollars.

"7. That at the time of the fires complained of in said sixth paragraph the season was dry, and the said Charleston & Western Carolina Railway Company permitted large quantities of dry grass, weeds, trash, and underbrush to gather upon its said right of way, and negligently allowed said inflammable and combustible ma-

terial to remain on said right of way, and that the fires complained of in said paragraph sixth were communicated to the fields of petitioner from said right of way.

"8. That the engines of said Charleston & Western Carolina Railway Company which set out the fire complained of in said paragraph 6 of said petition were defective and dangerous, not being properly equipped with safe and sufficient spark-arresters and safe and sufficient devices and appliances for preventing the emission of live sparks and cinders, and that the said engines were negligently operated, in that an unnecessary amount of steam was applied to said engines, thereby causing the emission of large and unnecessary quantities of live sparks and cinders, which said sparks and cinders set fire to the said right of way and was communicated to the field of petitioner adjacent to said right of way.

"9. That the spark-arresters of the engines of the said Charleston & Western Carolina Railway Company were insufficiently and improperly constructed to prevent large sparks of fire from issuing from said smoke-stacks, and the engineers in charge of said engines were negligent in operating said engines, in that they caused said engines to exhaust and emit live sparks of fire and cinders at the place where said combustible and inflammable material had been allowed to accumulate on said right of way.

"10. That on February 17, 1912, an engine of the defendant the Atlantic Coast Line Railroad Company, which was being run over the road of the Charleston & Western Carolina Railway Company, negligently emitted live sparks, which set fire to the dry grass, on which was growing a native vetch which reseeded itself, and burned over an area of two and three quarters acres, to petitioner's damage of six dollars per acre; that on March 20, 1912, an engine, which was being run over the road of the Charleston & Western Carolina Railway Company, negligently emitted live sparks which set fire to the dry grass on petitioner's farm, on which was growing a native vetch which reseeded itself, and burned over one acre, to petitioner's damage six dollars.

"11. That the engines which set out the fire complained of in said tenth paragraph of said petition were defective and dangerous, not being properly equipped with safe and sufficient spark-arresters and safe and sufficient devices for preventing the emission of live sparks and cinders, and that said engines were negligently

operated, in that an unnecessary amount of steam was applied to said engines, thereby causing the emission of large and unnecessary quantities of live sparks and cinders.

"12. That the said spark-arresters on the engines which set out the fires complained of in said tenth paragraph were insufficiently and improperly constructed to prevent live sparks of fire from issuing from said smoke-stacks, and the engineers in charge of said engines were negligent in operating said engines, in that they caused said engines to exhaust and emit live sparks and cinders at the place of said dry grass.

"13. That the engines which set out the fires complained of in the said tenth paragraph were being operated at a dangerous and unnecessary rate of speed, thereby causing the emission of large and unnecessary quantities of live sparks and cinders, which set fire to the farm of petitioner.

"14. That on January 14, 1913, an engine of the Atlantic Coast Line Railroad Company, which was being run over the road of the Charleston & Western Carolina Railway Company, negligently emitted live sparks which set fire to the dry grass on petitioner's farm, on which was growing a native vetch which reseeded itself, and burned over an area of ten acres of the value of six dollars per acre, and burned twenty tons of hay of the value of seventeen dollars per ton; that on February 13, 1913, an engine, which was being run over the road of the Charleston & Western Carolina Railway Company, negligently emitted live sparks which set fire to the dry grass on petitioner's farm, on which was growing a native vetch which reseeded itself, and burned over an area of three acres, to petitioner's damage six dollars per acre; that on October 16, 1913, an engine, which was being run over the road of the Charleston & Western Carolina Railway Company, negligently emitted live sparks which set fire to the dry grass on petitioner's farm, on which was growing a native vetch which reseeded itself, and burned over an area of one half acre, to petitioner's damage three dollars; that on November 2, 1913, an engine of the Charleston & Western Carolina Railway Company negligently emitted live sparks which set fire to the dry grass on petitioner's farm, on which was growing a native vetch which reseeded itself, and burned over an area of one half acre, to petitioner's damage $3; that on November 12, 1913, an engine of the Charleston & Western Carolina

Railway Company negligently emitted live sparks which set fire to the right of way of said Charleston & Western Carolina Railway Company, which said right of way had large quantities of dry grass, weeds, trash, and underbrush. upon it; and that said fires were communicated from said right of way to the field of petitioner and burned over an area of one half acre, to the damage of petitioner of three dollars.

"15. That the engines which set out the fires complained of in the said fourteenth paragraph of said petition, were defective and dangerous, not being properly equipped with safe and sufficient spark-arresters and safe and sufficient devices and appliances for preventing the emission of live sparks and cinders, and said engines were negligently operated, in that an unnecessary amount of steam was applied to said engines, thereby causing the emission of large and unnecessary quantities of live sparks and cinders, which said sparks and cinders set fire to the dry grass on the farm of petitioner and to the right of way of said Charleston & Western Carolina Railway Company, which said fires were communicated to the field of petitioner adjacent to the said right of way.

"16. That the engines which set out the fires complained of in the fourteenth paragraph were being operated at an unnecessary and dangerous rate of speed, thereby causing the emission of large and unnecessary quantities of live sparks which set, out the fires more fully set forth in paragraph fourteen of this petition.

"17. That the spark-arresters on said engines which set out the fires complained of in said fourteenth paragraph were insufficiently and improperly constructed to prevent live sparks of fire from issuing from said smoke-stacks, and the engineers in charge of said engines were negligent in operating said engines, in that they caused said engines to exhaust at the point of the dry grass on petitioner's farm, and not at some other point, where there was less danger of fire being caused by the emission of the sparks.

"18. Petitioner further shows, by way of aggravation, that in November, 1910, the Charleston & Western Carolina Railway Company negligently permitted its right of way to get in a foul condition, permitting large quantities of dry grass, weeds, trash, and underbrush to gather upon the same, and that an engine of said Charleston & Western Carolina Railway Company set fire to said right of way, which said fire was communicated to the farm of

petitioner and damaged petitioner in the sum of one thousand and twenty-five dollars, for which said amount said plaintiff received a verdict.

"19. Petitioner further shows, by way of aggravation, that in December, 1910, an engine of the Atlantic Coast Line Railroad Company, which was being operated over the line of the Charleston & Western Carolina Railway Company, negligently emitted live sparks of fire, which set fire to petitioner's farm and damaged petitioner in the sum of $1,378.59, and the plaintiff has received a verdict for said amount.

"20. Your petitioner shows that by reason of the facts aforesaid he has sustained actual damages of six hundred and seventy-one and 70/100 dollars, and that, by reason of the aggravating circumstances, that he is entitled to two thousand dollars additional damages, to deter said defendants from a repetition of their said negligence."

To this petition the defendants demurred as follows: "(1) Because the allegations of negligence are mere conclusions of the pleader, and are not accompanied by the facts so as to enable the court to determine whether or not negligence existed, as claimed. (2) Because there is a misjoinder of causes of action. (3) Defendants demur specially to paragraphs 6 and 7 of the petition, because the plaintiff fails to allege how the fire in question was communicated to the farm of petitioner. (4) Defendants demur specially to paragraphs 8 and 9, because the plaintiff fails to allege facts on which it may or may not appear to the court that the spark-arrester complained of was not safe and sufficient to prevent the issuing of sparks, and what was the defect in said spark-arrester. (5) Defendants demur specially to paragraphs 10 and 11, because plaintiff fails to allege facts showing wherein the engines of the Atlantic Coast Line negligently emitted live sparks, and facts showing wherein the spark-arrester was insufficiently and improperly constructed, or what was the unnecessary and dangerous rate of speed in question. (6) To paragraph 14, because the facts showing the negligence complained of on the occasion in question, mentioned in paragraph 14, are not set out. (7) To paragraph 15, because plaintiff fails to allege facts showing how the engines referred to were defective and dangerous, or what was the character of the spark-arrester used, and what would have been a

safe spark-arrester, and facts showing what amount of steam was supplied, and under what circumstances, and how the fire was communicated to the field of petitioner. (8) To paragraph 16, because plaintiff fails to allege what was the rate of speed under which the operations took place, whereby the sparks complained of were emitted, and because plaintiff fails to allege what part of his farm was not covered with dry grass, or what notice it gave the railroad company in operating its trains. (9) To paragraphs 18 and 19, because plaintiff fails to allege how the fire in question was communicated to the farm of petitioner, and what the negligence consisted of. (10) To paragraph 20, because it is the conclusions as a pleader, and without sufficient facts to warrant the conclusions, what other facts to which plaintiff may be entitled to recover." The court overruled the demurrer and the defendants excepted.

The learned counsel for the plaintiffs in error strongly and ably contends that the petition presents no cause of action for punitive damages. The cases which he cites, however, do not convince us of the soundness of his position. In *Chattanooga Railroad Co.* v. *Liddell,* 85 *Ga.* 482 (11 S. E. 853, 21 Am. St. R. 169), which was an action against the railroad company for injuries to a passenger from the derailing of a coach on a defective track, it was held that it was error to charge that "if the evidence disclosed that the company was grossly negligent, the plaintiff would be entitled to recover 'what we call punitive damages to punish them for that negligence;' the evidence of negligence not being sufficient to authorize a charge of punitive damages, or if so, such damages being [should be] given, not as a punishment, but to deter the wrong-doer from repeating the trespass." And in the decision in that case (p. 495) it is said, "exemplary damages should not be awarded for such injury, unless it is the result of wilful misconduct of the employees of the company, or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. . . . 'The act must have been done under such circumstances as show a disregard for the rights of others, or an intention to set at defiance the legal rights of others, or the ordinary obligations of society.' Under these rules, which seem to us to be sound, we do not think the evidence of negligence in this case was sufficient to authorize the court to charge the jury that they might find punitive damages. Even if it was we would still hold, under the rul-

ings of this court, that the charge of the trial judge was erroneous. Code, § 3066, says: 'In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, *either to deter the wrongdoer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff.'* In the case of *Ratteree* v. *Chapman,* 79 *Ga.* 574 [4 S. E. 684], this court held that it was error to charge the jury that they 'may give exemplary damages, not only as compensation for the wounded feelings of the plaintiff, but to punish the defendant, and to deter others from the commission of like offenses.' The judge in the present case charged that exemplary damages might be given as a punishment of the railroad company, while the Code says they may be given 'to deter the wrongdoer from repeating the trespass.' As we said in the *Ratteree* case, 'it is best that the law of the case, when expressed in the code, be given as expressed, in charge to the jury.' Under the code, the damages are not given as a punishment, but are given to deter the wrongdoer from repeating the trespass."

In *Southern Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E. 1000), the first headnote is as follows: "To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Under the facts disclosed by the record it was error to charge upon the subject of such damages." And in that case (p. 149) Justice Cobb said: "There was nothing shown by the evidence in the present case which warranted the imposition of punitive damages. The negligent act of the company in carrying the plaintiff beyond her station was not sufficient. . . It is doubtful if the evidence warranted a finding that the conductor knew of the improper conduct of the soldiers. But granting that he did, one of the plaintiff's witnesses testified that 'the conductor did all he could with them; he couldn't do anything with them.' . . The evidence discloses nothing which would indicate any wanton or wilful disregard of the rights of the plaintiff."

In *Southern Ry. Co.* v. *Davis,* 132 *Ga.* 812 (65 S. E. 131), the third headnote is as follows: "In an action for damages for a personal injury, based on negligence alone, and in which, under the

pleadings and evidence, no question of wilfulness, wantonness, malice, oppression, or conscious indifference to consequences is involved, it is error to charge that 'In every tort there may be aggravating circumstances either in the act or the intention, and in that event the jury may give additional damages either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff.'" In that case the plaintiff was injured on a crossing, in a collision between two railroad trains; and as stated by Justice Lumpkin, "The sole act of negligence on which the plaintiff's right of action rested was a violation, by the defendant's engineer, of Civil Code, § 2234, which declares that, 'Whenever the tracks of separate and independent railroads cross each other in this State, all engine-drivers and conductors must cause the trains which they respectively drive and conduct to come to a full stop within fifty feet of the place of crossing, and then to move forward slowly. The train of the road first constructed and put in operation shall have the privilege of crossing first.'" And in the opinion (p. 817) it was said: "A failure to comply with the statutory requirement as to the giving of a signal or the taking of some precaution in connection with railway crossings, and which merely raises the standard of diligence, is different from disobedience of a statute in regard to something which is malum in se. Whether the terms 'wilful or wanton negligence,' which are sometimes employed, be accurately used or not, they do not mean that mere negligence alone, as a rule, authorizes charges on the subject of exemplary and punitive damages. . . There must be something more than mere failure to give a statutory signal or make a stop required by a statute in approaching a crossing. There must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn. And these facts must be shown in addition to the mere omission to give statutory signals or to take statutory precautions in approaching crossings. . . There was no evidence here which authorized a charge on the subject of exemplary or punitive damages, and the charge on that subject was error."

In *Southern Ry. Co.* v. *Nappier,* 138 *Ga.* 31 (74 S. E. 778), the fifth headnote is as follows: "Where, in a suit for a personal in-

jury to a passenger on a railroad-train, resulting from his falling or being thrown from the platform of a car on which he was riding, the only act of negligence alleged was the failure to provide him with suitable accommodations inside the car, thus compelling him to ride on the platform, and there was no evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or of such entire want of care as would raise a presumption of conscious indifference to consequences, it was error to charge: 'In every tort there may be aggravating circumstances, either in the act or in the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff.' " This headnote shows that the facts in that case were quite different from those in the instant case. In *Georgia Railroad* v. *Gardner,* 115 *Ga.* 954 (42 S. E. 250), the decision in full is as follows: " (1) One who enters upon and injures another's land is not, though a trespasser, liable for punitive damages, when the acts causing the injury were done in good faith, under an honest belief that the land belonged to the former, and there was nothing in the manner of doing such acts as to indicate an intention to wantonly disregard the rights of the true owner. (2) It was in the present case erroneous to give in charge to the jury section 3906 of the Civil Code, which authorizes the giving of such damages in cases of tort where there are aggravating circumstances." In *Ansley* v. *Americus,* 14 *Ga. App.* 707 (82 S. E. 159), the question was whether a municipal corporation could be held liable in exemplary damages, and this court, without positively deciding that question, held that the evidence in that case did not authorize the charge on exemplary damages. There was no allegation of any special damage in that case, but Ansley sued the city of Americus "because of alleged negligence on the part of a contractor of the city in piling up and leaving for an unreasonable time dirt and clay on the sidewalk in front of plaintiff's house from a ditch that was being dug in the street, thereby causing him and his family great inconvenience and annoyance."

All of these decisions which hold that, before punitive damages can be recovered, the element of malice, fraud, wantonness, or oppression must be present, recognize that if the act is done under circumstances which show a wanton disregard for the rights of

others, or from which an inference of a conscious indifference to consequences and to the legal rights of others, or to the ordinary obligations of society, might legitimately be drawn, then punitive damages may be recovered. In each of those cases also the injuries complained of resulted from a single act. In the case at bar punitive damages are not asked because the railroads were negligent, or even grossly negligent, in setting out any one fire, but the aggravating circumstances which the plaintiff claims entitle him to punitive damages are the great number of fires negligently set out by the defendants upon different occasions. Exemplary damages may be recovered for injuries to real estate and to personal property where the act is done with a reckless disregard of the rights of others, or of the consequences of the act. While perhaps no aggravating circumstances would be inferred from the negligent setting out of two or three fires within a period of two years, yet, where the petition alleges, and the railroad by its demurrer admits, the negligent setting out of fifteen fires upon the farm of the petitioner at different times within that period, it seems to us that these repeated and continued trespasses might be sufficient for the jury to infer such a reckless disregard by the defendant of the legal rights of the plaintiff, and such a wanton indifference to consequences, as to entitle the plaintiff to recover punitive damages. See 1 Sedgwick on Damages, §§ 363, 366, 373; Civil Code, § 4503; *Holman* v. *Brown*, 8 *Ga. App.* 551 (69 S. E. 1084); *Batson* v. *Higginbothem*, 7 *Ga. App.* 835 (68 S. E. 455). In the last-mentioned case (p. 839) Chief Judge Hill said: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event, the jury may find additional damages, either to deter the wrong-doer, or as compensation for the wounded feelings of the plaintiff. Civil Code (1895), § 3906. This character of damages is called 'punitive,' and, if aggravating circumstances are proved, may be given, even where the actual injury is small. *It is always exclusively a question for the jury to determine when such additional damages should be allowed* [italics ours], as well as the amount of such damages. The jury in this case found punitive damages in addition to general damages, and it is earnestly insisted that there was no evidence authorizing a finding of punitive damages. As there will be another trial, we do not care to consider and decide that question. We leave it for the determi-

nation of the jury, under the evidence that may be submitted on the subject at the second trial."

In National Folding Box &c. Co. *v.* Robertson, 125 Fed. 524, it was said that "A person may be regarded as acting wantonly who acts without regard to propriety or the rights of others, or is reckless of consequences and yet without settled malice." And in Birmingham Ry. *v.* Powell, 136 Ala. 232 (33 So. 875), it was said: "That degree of recklessness, with a conscious knowledge of its probable harmful consequences, constitutes that wantonness which in law finds its equivalent in wilful or intentional wrong." In Western Union Tel. Co. *v.* Lawson, 66 Kan. 660 (72 Pac. 283), it was said: "Wantonness as authorizing exemplary damages does not mean necessarily malice, but a reckless disregard of the rights of others." In the language of the learned counsel for the defendant in error in the case at bar: "If the defendant railroad company had negligently inflicted injury on the plaintiff by shooting him on fifteen different occasions, or had fifteen times destroyed his barn by negligent blasting, on separate occasions, or had fifteen times negligently destroyed his dam, on different occasions, or had negligently broken his enclosure fifteen times, on separate occasions, would not this show such a careless indifference to consequences as to amount to malice, wantonness and aggravation? And, if so, is it any defense to say the injury inflicted on plaintiff was not occasioned in any one of the modes set out above, but by fires negligently set out? The result to the plaintiff is the same in whichever way the damages were inflicted, and the aggravation consists, not so much in the circumstances surrounding the act, but in the negligent repetition of the same act." We can suppose other negligent acts by a defendant, which, while not subjecting him to punitive damages for a single tort, might by frequent repetition show such careless indifference to consequences. and to the rights of others as to make him liable for punitive damages. For instance, if A. and B. pass each other daily, and A. negligently stumbles against B. and injures him, A. would only be liable to B. for B.'s actual damages. But if, every time they met, or every other time, or once a week, or once a month, A. should negligently stumble against B. and injure him, would not this constant repetition of A.'s tort raise a jury question as to whether B. was entitled to punitive damages to deter A. from continuing his

negligence? Suppose, again, that A., when passing on his regular daily route by B.'s premises, should carelessly and negligently throw a lighted cigarette, or cigar-stump, on B.'s lawn, and thereby injure and burn B.'s grass and flowers; A. would be liable for actual damages only; but if this occurred fifteen times within two years should not B. be allowed punitive damages to deter A. from continuing his careless and tortious conduct? And in the instant case, where (according to the petition) the defendant railroad company had its engines equipped with such defective spark-arresters that quantities of large sparks of fire issued from the smoke-stacks of the engines and set out numerous fires on different and separate occasions upon the plaintiff's premises, and where the plaintiff has not only complained to the defendant of its tortious acts but has actually recovered a money verdict because of them, and the railroad company continues to use its defective spark-arresters and continues to set fire to and destroy the plaintiff's property, can this court hold, as a matter of law, that the defendant's tort has in it no such aggravating circumstances as would authorize a jury, if the allegations of the petition were sustained by evidence, to give exemplary damages against the company, to deter it from continuing to harass and annoy the plaintiff and to destroy his property?

It is contended by the learned counsel for plaintiff in error that as McElmurray bought a farm adjacent to the railroad and raised a hay-crop thereon, he took upon himself the risk of his hay being destroyed by fire from the engines of the railroad, but as said by this court in *Albany &c. R. Co.* v. *Wheeler,* 6 *Ga. App.* 270 (64 S. E. 1114), "one who owns property adjacent to a railroad, and builds his houses, or otherwise locates his property near to the right of way, takes upon himself the risk of injury through fires occasioned by the running of the locomotives with ordinary care and diligence, but he does not take upon himself the risk of fires caused by negligence of the company or its servants." It may be that upon the trial of the case the evidence submitted will not authorize a recovery for punitive damages, but we are now discussing the petition only, and the demurrer thereto, and in our judgment the petition in this particular is not subject to the demurrer attacking it.

The petition not being subject to demurrer, except as to the misjoinder, the judgment overruling the demurrer is affirmed with

direction that the petition be amended by dismissing the case as to the Atlantic Coast Line Railroad Company.

*Judgment affirmed, with direction.*