**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Harvey Thomas SMOOT, Jr., Appellee.**

**No. 23789.**

United States Court of Appeals
Fifth Circuit.
July 24, 1967.

332

Alex A. Lawrence, Robert M. Hitch, Savannah, Ga., Kirk McAlpin, Atlanta, Ga., for appellant, Bouhan, Lawrence, Williams & Levy, Savannah, Ga., of counsel.

Alton D. Kitchings, Savannah, Ga., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

COLEMAN, Circuit Judge:

There is an old folk saying, the origin of which I know not, that "the third try is the charm". The legal warfare represented by this litigation had its origin nearly twelve years ago; now it is before this Court for the third time. In the most recent trial, the subject of this appeal, the plaintiff-appellee, on a jury verdict, was awarded judgment in the sum of $65,787.60. The Judgment will be affirmed.

Sergeant Smoot was the insured in a State Farm general automobile liability policy carrying limits of $10,000 as to any one person, $20,000 as to any one accident, and $5,000 property damage. On November 5, 1955, while driving on Skidaway Road, near Savannah, Georgia, Smoot collided from the rear with an automobile being driven by Mrs. Katie Mae Donaldson. He said he had been watching some children on bicycles on the shoulder of the road; his attention being thus diverted he failed to see Mrs. Donaldson stop in front of him. Thus the collision. The impact was enough to involve five vehicles and knocked one of the passengers in the Donaldson car to the floor of the vehicle.

Smoot was a member of the armed services of the United States. Three months after the accident he was assigned to duty on Guam. In the meantime, he had notified State Farm of the accident and they had taken his statement. About March 20, 1956, through Mrs. Donaldson's attorney, the Insurer received a medical report showing she had sustained a rather severe whiplash injury, causing misalignment of the fifth cervical vertebra, with a consequent narrowing of the fifth intervetebral space. She was then experiencing gradual progress toward the relief of her symptoms. Her attorney orally offered to settle the claim for $2,500. Later, a written offer was submitted to settle for $4,000. State Farm rejected these offers.

In July, 1956, the Donaldson attorney reported to State Farm a recurrence of certain symptoms in Mrs. Donaldson's condition. By September 27, 1956, the Insurer was able to have Mrs. Donaldson examined. The examination showed continued symptoms. About this time State Farm rejected an offer to settle for $5,000. Of great significance, Smoot was not informed of any of these offers and refusals.

In December, 1956, Mrs. Donaldson and her husband filed separate suits against Smoot in the City Court of Savannah. Mrs. Donaldson claimed $33,980. Her husband claimed $2,922.83. Whether there was valid service of process on Smoot was quite open to question, as he was still on Guam. Mrs. Donaldson by this time demanded $5,000 in settlement of her damages, and her husband demanded the $2,922.83 special damages claimed in his complaint.

On February 5, 1957, State Farm wrote Smoot a letter stating the company had forwarded his claim file to their attorneys and had " * * * asked that they look after the defense of the lawsuits brought against you by Katie Mae Donaldson and William M. Donaldson, husband * * *." The letter stated, "These attorneys will give the matter all necessary attention * * *," and warned Smoot of his duty to cooperate. This paragraph followed:

"Because of the fact that the amount claimed against you in these suits is in excess of the protection afforded by this policy, there may be a personal liability upon your part. In view of the possible personal liability, it will be agreeable with this company and its representatives for you, if you so elect, to procure attorneys of your own choosing, at your own expense, to represent you personally and appear in this matter, in addition to the attorneys we have selected and will compensate."

On February 11, 1957, State Farm moved for and apparently secured a stay of the Donaldsons' suits pending Smoot's return to the jurisdiction.

Smoot returned to the jurisdiction the first part of 1958, six months before City Court trial. In March, 1958, after a hearing, there was a decision against

Smoot and State Farm on the question of whether the process previously obtained on Smoot was valid. Because of the failure of State Farm's attorneys to have a transcript or certificate made of the hearing, they rendered themselves unable to appeal that decision.

Just before trial on the merits, State Farm offered to settle both Donaldson cases for $5,000. The offer was refused. Mrs. Donaldson's doctors re-examined her a few days before trial. State Farm did not ascertain the results of these examinations.

At the trial, two physicians who had examined Mrs. Donaldson testified *for the defense*. Neither had ever seen x-rays of Mrs. Donaldson before taking the stand. Each essentially confirmed the plaintiffs' claims concerning the extent of Mrs. Donaldson's injuries, including the presence of some disc trouble, a permanent thing. State Farm knew the doctors would testify substantially as they did. In other words, State Farm knowingly adduced proof unfavorable to its assured.

While the City Court jury was considering its verdict, one of the attorneys retained by State Farm discussed with the attorney *for the Donaldsons* the possibility of a verdict in excess of the State Farm policy limits. There was undenied testimony below that the State Farm attorney mentioned the letter written to Smoot [stating he could employ his own counsel] and said that "the letter took care of it". Shortly after this conversation the jury returned verdicts against Smoot totaling $26,902.83, on which judgments and executions were entered.

The attorneys for State Farm filed a motion for a new trial, but they failed to timely file a necessary supporting brief of evidence as required by Georgia procedure. Through this omission, the motion automatically failed, Cf. Smoot v. Donaldson, 99 Ga.App. 191, 108 S.E.2d 295 (1959).

Having come to this unfortunate pass, Smoot filed suit against State Farm claiming damages equal to the excess of the Donaldson judgments over his policy limits. State Farm's petition for removal to the United States District Court on the basis of diverse citizenship was granted. The District Court then sustained what purported to be a motion to dismiss for failure to state a claim. Smoot's appeal to this Court resulted in a reversal and remand. Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525. That was the first trip to this Court.

We there held, 299 F.2d 525, at 531, that the allegations of the complaint "were quite sufficient to charge want of good faith in rejecting settlement offers within the policy limits and generally in the handling of the defense".

We elaborated:

"The question under the good faith doctrine is whether in the light of these developments the Insurer acted in good faith in failing to settle within the policy limits. By its very nature that question encompasses the more specific ones concerning the reasonable valuation of the case, whether, at each stage, proposed settlements were rejected consciously in terms of deliberative judgment evaluation or because of other or no reasons. The conduct under inquiry is no longer the simple one of the driver of the assured vehicle. It is now the action of the Insurer in the light of the conduct of its driver-assured, the probable medical evidence, and the like."

We next said:

"Two other somewhat peripheral matters must first be dealt with. The first is the contention that the Insurer formally notified the Assured that since the demands exceeded the policy limit, the Assured had a right, at his expense, to retain his own counsel. Just what relevance this had at this point where the matter is still in the stage of jousting on the pleadings, we are not quite sure. Obviously, this does not reduce the absolute obligation to exercise good faith (or absence of negligence as the local law speci-

fied) in the defense promised by the policy. The defense to be offered is 'to defend any suit against the Insured alleging such injury * * *.' Defense is not inexorably tied into either an actual, ultimate payment or the amount of it. American Fidelity & Casualty Co. v. Pennsylvania Threshermen, 5 Cir., 1960, 280 F.2d 453. No mention is made of claims within the policy limits. Next, the notice cannot shift to the Assured the expense of affording the defense which the policy promised him. That is what the Insured agreed, at its own expense, to supply. Finally, it is not clear what separate counsel can do. The settlement, by the policy terms is, of course, left to the Insurer. This means, of course, not at the unfettered whim of the Insurer but rather as good faith (or negligence as the local law prescribed) dictates a certain cause of action, settlement, trial, or the like. But apart from the Insurer's obligation to use the proper care (good faith or prudence as the case might be), little leeway is afforded to the so-called 'independent' counsel acting for the Assured's excess interests. What is he to do? If he settles, or encourages settlement by direct contact with the damage suit plaintiffs or the plaintiff's counsel, he invites a serious challenge that the Assured has declined to cooperate with the Insurer whose counsel is opposed to the idea of settlement. Or worse, he is exposed to the charge that he has connived with the enemy. If his purpose is merely to demand in legalistic terms that the Insurer settle the case, it amounts to no more than what the Assured could do after the event with the result being determined, not by the fact a demand was made, but by the absence or presence of requisite good or bad faith, prudence or imprudence, as the case might be. In short, we see little purpose at this point in the assertion that because the Insurer called the Assured's attention to the obvious fact that he was sued in excess of the policy limits, the Assured could get the needed defense to his personal uninsured fortune by hiring another lawyer at his own expense. Indeed, it is difficult to see how, as the Insurer contends, this is a notice of antagonistic conflicting interests. The Insurer has one primary interest: to give that defense which the policy promised and to perform that promise in accordance with the standards of the local law (prudence or good faith). If its interests are antagonistic to the Assured, it has not fulfilled this promise. Its contract, with specified dollar limits, may perhaps put it in a somewhat difficult position. But always it must act with requisite care (good faith or prudence as local law spells out) toward the Assured's reinterest. It may, of course, properly consider its own interest, but it may never, never forget that of its Assured. Fidelity & Cas. Co. of N. Y. v. Robb, 5 Cir., 1959, 267 F.2d 473."

This is a lengthy quotation, but is of such great clarity and so definitely at the heart of this controversy that it well bears repeating.

In that decision, [at p. 533] it was further pointed out that failure properly to appeal was "a further illustration of bad management and handling of the case".

We also need the following language which should have aroused the concern of the Insurer:

"There is the charge nowhere answered or controverted in the annexed papers, that despite the array of distinguished, conscientious counsel supplied by the Insurer in the nominal defense of the damage suit, the whole thing was being directed by adjusters or other functionaries having insufficient judgment or ability either to direct or to choose a prudent course of action or determine in intelligent good faith just what the case was worth in terms of the probabilities of success or failure in the event of trial."

On remand, the Insurer was allowed to introduce a new wrinkle. It joined the

Donaldsons under Fed.R.Civ.P. 19(b) and pleaded in accord and satisfaction of the judgments. A jury found in favor of this defense. On appeal, the second trip to this Court, we again reversed and directed a trial solely between Smoot and State Farm, Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 337 F.2d 223.

After receiving the evidence, the jury, in the Court below, returned a special verdict in which it found (1) that State Farm was negligent in the manner in which it carried out its obligation to the insured under the automobile liability insurance policy; (2) that such negligence resulted in damage to the insured; (3) that State Farm was guilty of bad faith in the manner in which it carried out its obligations as insurer; (4) that such bad faith resulted in damages to the insured; (5) that the plaintiff was entitled to special damages in the sum of $23,858.40; (6) that plaintiff was entitled to general damages in the sum of $10,000; (7) that plaintiff was entitled to punitive damages in the sum of $10,-000; and (8) defendant was entitled to recover attorney's fees in the sum of $21,929.20. Then followed a general verdict for $65,787.60.

With highly understandable concern, now that a $2,500 claim has been permitted to balloon to such proportions, State Farm urges it was error to overrule its motion for new trial because (1) the question of negligence should not have been submitted to jury; (2) the evidence was insufficient to warrant the finding of bad faith; (3) there was no evidence to support the award of general damages; (4) the award of punitive damages is without basis in law or fact; and (5) there was insufficient evidence to support the award of attorney's fees.

We shall take up these contentions in the order made.

## 1. Negligence

The insurance policy provided, "As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient * * *."

Of this provision this Court noted on the first appeal to it,

> "The insurance policy perhaps provides a basis for distinguishing the standard of performance as between settlement and general defensive actions. The promise to defend is stated in positive terms while that of settlement is couched in terms of discretion * * *." Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525, 534, fn. 19.

Doubtless with the footnote in mind, the appellee here observes,

> "The appellant seems to have confused two separate concepts of law. The first concept to be noted regards the standard of care or conduct required of an insurer in rejecting an offer to settle within the limits of its liability policy. The other concept, far more germane to the case sub judice, regards the standard of care or conduct required of an insurer in the conduct of the defense of its insured under its promise to defend expressed in positive terms in its liability policy."

In arguing that the issue of negligence should not have been submitted to the jury, State Farm points to Cotton States Mutual Insurance Co. v. Phillips, 110 Ga.App. 581, 139 S.E.2d 412, 415 (1964). *Cotton States* dealt with a post judgment failure to settle and held that bad faith, not merely negligence, must be proved if the insurer is to be held liable for damages over the policy limits for refusing to settle. We would have been of the view, however, that this rule applied only to a refusal to settle because the Court further held that the insurance

company was charged with the duty of exercising ordinary care in investigating a case in the determination of whether to defend it or to settle it.

It seems clear to us, however, that any doubt about this issue was settled by the Georgia Court of Appeals on June 6, 1967, in its full Court decision on United States Fidelity and Guaranty Co. v. Evans, 156 S.E.2d 809. In that case the owner of an automobile had a liability insurance policy with the insurer in the amount of $10,000. Prior to a jury verdict, the insurer could have settled a claim against him for $9,500. The case went to trial and the jury returned a verdict for $25,000. The judgment could have been settled for $10,000, which the insurance company likewise refused. On appeal, the judgment was affirmed for the full amount. The insured then sued the insurer and obtained judgment for the excess portion of the judgment which had been rendered against him. The Court of Appeals affirmed. It held that the suit was in tort and involved a duty and an alleged breach of that duty, citing our former decision in *Smoot*, 299 F.2d 525.

The Court proceeded to say that "As a professional in the defense of suits, [the insurer] must use a degree of skill commensurate with such professional standards. As the champion of the insured, it must consider as paramount his interest, rather than its own, and may not gamble with his funds".

The Court quoted with approval the majority rule that "The insurer must accord the interest of the insured the same faithful consideration it gives its own interest".

Under these considerations the Court said that terminology, seeming to use bad faith and negligence as disjunctive or alternative tests, means little, rather that the *significant thing is the factual situation in the light of the duty which exists* (italics ours). The judgment for the insured was affirmed.

The case of Potomac Insurance Company v. Wilkins Company, 10 Cir., was decided April 18, 1967, 376 F.2d 425. A

twenty-four year old man, employed by a sub-contractor, fell from the top of a ladder on a construction project and sustained spinal injuries which rendered him a total and permanent quadriplegic. He sued for $750,000. The jury verdict was for $300,048.38. The insurance coverage amounted to $100,000. Before trial, the plaintiff offered to settle for $95,000. During trial, he offered to settle for $85,000. The insurance company had thoroughly investigated the case and insisted that there was no proof of liability on the part of its insured and refused to consider any settlement in excess of $25,000, "thus effectively declining all demands to settle". After the $300,000 verdict, a new trial was granted, confined solely to the issue of damages. Before the new trial took place, the insured, with the approval of the insurance company, effected a settlement in the amount of $115,000. The insurance company paid its policy limits and the insured sued for the remaining $15,000, alleging that the insurance company negligently and in bad faith failed to settle the claim within the policy limits. The trial court found as a fact that the insurance company had not been negligent in its investigation or its preparation of the case for trial, that the case was properly tried, that the conclusion of counsel for the insurance company as to the absence of liability was an honest opinion, but as to the issue of good faith the trial court held that defendant and its counsel realized there was also the chance that their judgment and opinion would be wrong and that if liability were established the probabilities were that there would be a very substantial excess judgment. The trial court further held that the evidence failed to disclose any consideration by the company of the effect upon the insured if the settlement were rejected. The trial court therefore further held that the insurance company did not act in good faith and was liable for the $15,000.

The Court of Appeals held:

"It is well established that the law imposes upon the insurer the duty to

exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the insured as well as itself in determining whether to accept or reject an offer of settlement. While the insurer may properly give consideration to its own interest, it must in good faith give at least equal consideration to the interest of the insured, and if it fails to do so, it acts in bad faith. United States Fidelity and Guaranty Co. v. Lembke, 10 Cir., 328 F.2d 569; Moore v. United States Fidelity and Guaranty Co., 10 Cir., 325 F.2d 972; Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621 [142 A.L.R. 799]."

The case was one in which the cause of the accident "was somewhat unclear" and was "largely circumstantial". Moreover, there was reason to believe that the plaintiff had been contributorily negligent. Counsel for the insured was satisfied there was sufficient circumstantial evidence to take the case to the jury and insisted on settlement.

The Court of Appeals concluded that the insurance company by refusing to negotiate a settlement unduly subjected the insured to liability substantially in excess of his policy coverage, that it did not afford equal consideration to the interests of the insured, and that the insurance company, therefore, did not act in good faith in the matter of settlement.

As to *Smoot*, however, liability was obvious and inescapable. The condition of the injured woman was becoming progressively worse, yet State Farm handled the claim as already indicated. Obviously, there was a far more aggravated lack of good faith toward Smoot than that which resulted in liability in *Potomac Insurance*.

■ This Court previously noted of this case, "The allegations were quite sufficient to charge want of good faith in rejecting settlement offers within the policy limits and generally in the handling of the defense," 299 F.2d at 531. The record shows that State Farm at all times exercised almost total, if not total, control over the handling of these claims and the defense of the suits. At the trial below the proof abundantly supported the allegations. The prerequisites for the allowance of attorneys fees were amply proven.

## 2. General Damages

■ It seems clear Smoot's suit was one in tort. General damages are recoverable in tort actions under Georgia law. Lipscomb v. Watkins, 28 Ga.App. 185, 110 S.E. 502 (1922). It is the prerogative of the jury to award such damages in an amount consistent with the evidence. Seaboard Air Line R. Co. v. Holloman, 97 Ga.App. 16, 21, 102 S.E.2d 185, 190 (1958).

■ Smoot testified that he tried to sell his house on moving from Savannah in 1960, but was unable to do so because the Donaldson judgment constituted a lien against it. Later he lost the house for inability to meet the payments, and as a result of foreclosure by FHA his credit was destroyed. Thus, the $10,000 special damages prayed for and awarded cannot be said to be without evidentiary support. Indeed, this Court foresaw this element of damage on the first appeal and observed, "So long as this judgment remains outstanding as a lien on the Assured's property he is thwarted in a disposition of it". 299 F.2d at 530.

## 3. Punitive Damages

In support of the award of $10,000 punitive damages appellee cites the following Georgia statute:

"In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Ga. Code Ann. Section 105–2002 (1933, Revised 1956).

It is already the law of this case that we have here " * * * a tortious nonperformance of a contract * * * ", 299 F.2d at 530.

■ We agree under Georgia law that the evidence must support a finding

of wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences, Mills v. Mangum, 107 Ga.App. 614, 131 S.E.2d 67, 69 (1963) and other cases cited by Judge Ainsworth in his dissenting opinion. We cannot agree that the circumstances revealed only bad management and lack of prudence. We deliberately avoid the prolixity or repeating the facts of this case in connection with each and every point raised in this appeal. We hold that the jury had ample warrant to infer from all the facts that the insurer as to this insured in its refusal to settle and in its ineffective handling of his rights in court was guilty of legal wilfulness and of a reckless disregard of Smoot's rights.

### 4. Attorney's Fees

At least since 1910 [Ga.Civ. Code 1910 § 4392], as now provided by § 20–1404 of the Georgia Code (1933; Revised 1965), it has been the law of Georgia that if a "defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow" attorney's fees as a part of the expense of litigation. In O'Neal v. Spivey, 167 Ga. 176, 145 S.E. 71 (1928) the Supreme Court of Georgia (opinion by Chief Justice Russell) held that any one of the above mentioned three species of bad conduct may authorize a recovery of attorney's fees under this section of the code. It is implicit in the opinion that *in the absence of any contract* such compensation may be allowed on a quantum meruit basis.

In his complaint, Smoot sued for attorney's fees in the following language:

"(e) That petitioner have judgment against the defendant in a sum equal to fifty percent (50%) of all other damages hereinabove prayed for as reasonable attorneys fees because defendant has acted in bad faith and has been stubbornly litigious and has caused plaintiff unnecessary trouble and expense."

On the trial of the cause, four members of the Savannah Bar testified that fifty percent (50%) of any sums recovered would constitute a reasonable attorney's fee in this case. One of these attorneys had been practicing law in Savannah for thirty-nine years. Counsel for State Farm waived proof of his professional qualifications by saying "We will most certainly waive Mr. Brannen's qualifications. He is a very fine and distinguished counsel". Another of the attorneys since 1961 had been either Chairman or a Member of the Savannah Bar Association Committee on Fees. All four of these attorneys testified unequivocally that in this particular case fifty percent (50%) of the amount recovered would be a reasonable fee. Their testimony nowhere alluded to any contingent fee contract between Smoot and his counsel, although the existence of such a contract had earlier been injected into the evidence by cross examination propounded to Smoot by counsel for State Farm. *None of the testimony of these four attorneys was objected to, nor did State Farm at any time introduce any evidence in contradiction.* At the close of all the testimony counsel unsuccessfully moved to strike this testimony.

On this issue the Court charged the jury as follows:

"The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

In that connection I charge you that if you find from the evidence in this case that the defendant acted in bad faith and has been stubbornly litigious or has caused the plaintiff, Sergeant Smoot, unnecessary trouble and expense, you may award reasonable attorneys fees, even though it may be that the plaintiff has not yet paid the attorney rendering necessary services for him. I charge you that any award of attorneys fees in this case should be determined on a quantum meruit basis, irrespective of any contract which may exist between the plaintiff and his attorney as to the amount of such fees.

Now, quantum meruit simply means that the attorneys fees should be determined on the basis of what would be a reasonable fee for the work performed under the circumstances of the particular case. The bad faith above referred to which would authorize the award of attorneys fees refers to bad faith on the part of the defendant in the transaction out of which plaintiff's cause of action arose.

Now in considering whether or not the plaintiff in this case is entitled to an award of attorneys fees, I charge you that attorneys fees, as an element of damages, are not a part of aggravated or additional damages with respect to which I have heretofore charged you. Attorneys fees, in a proper case, may be awarded as damages and recovered by the plaintiff in addition to such other damages."

Counsel for State Farm excepted to this charge. A reading of the Georgia cases, including O'Neal v. Spivey, supra, leaves no doubt that the charge was legally correct.

Appellant now says, in its brief, that attorney's fees could not be awarded because there was no bad faith. The jury found otherwise and we have already held that there was evidence to support the finding.

It is further argued, "There was no evidence as to what was a reasonable moneyed or cash fee; but the only evidence on the subject was that contingent fees of one-half (½) the amount recovered were usually contracted for. We are aware of no authority which would authorize in any case the consideration of any other than reasonable cash expenses and fees". We cannot agree.

In the first place, counsel has [unintentionally no doubt] misquoted the record. Attorney Perry Brannen categorically testified that "a contingent fee of fifty percent (50%) of recovery" would be reasonable. He said nothing about "one-half (½) the amount recovered [being] usually contracted for". The other three attorneys testified exactly to the same effect, did not mention "usual" contingent fee contracts at all, and were not

cross examined. In any event, the Court specifically instructed the jury not to consider any contingent fee contract.

Thus, the jury decided the reasonableness of this fee on uncontradicted testimony which came from witnesses whose professional qualifications were admitted.

■ It is true that the Georgia Courts have neither approved nor condemned percentage of contingent recovery as a basis for fixing the fees provided by § 20–1404. In the exercise of our own judgment we can see no valid reason for condemning it. The use of contingent fees for the employment of attorneys by people otherwise financially unable to employ counsel is bound to have been a common practice when this statute was enacted. In view of the proof of this record, to hold that such a basis for the consideration of reasonableness *is impermissible as a matter of law* would to an appreciable extent nullify the statute. Such a ruling would mean that citizens without funds or the reasonable expectation of funds with which to pay a cash fee could be denied their day in court for lack of counsel. The victim of bad faith, stubborn litigiousness, and unnecessary expense solely for lack of financial resources would stand without his opportunity for redress, whereas those with funds could invoke and would obtain the relief ordained by the statute. We hold that the statute is not subject to such a self-defeating interpretation. It would fly in the face of reason to say that it had any such purpose or intent. A reasonable fee is exactly what the term implies regardless of whether its computation begins in gross or from percentages, taking into consideration all of the legitimate aspects of the case.

■ Even if this were not so, how can this Court in the exercise of its appellate jurisdiction ignore or factually overturn the uncontradicted testimony of professional witnesses whose qualifications were admitted? The award of attorney's fees must be affirmed.

We are painfully aware of what has happened to State Farm in this case. Unfortunately, the litigant has brought

the consequences upon itself. For value received, it sold a contract to this plaintiff-appellee in which it bound itself to protect him to the limits of the policy. The Company had taken Smoot's statement before he left the Country and thus had notice of his liability for he had admitted negligence in not keeping a proper lookout to avoid colliding with the vehicle ahead of him. The only real question in the case was the amount of the damages. While Smoot was on the Island of Guam the appellant failed to keep him informed of repeated opportunities to settle for a relatively minor portion of its coverage. It did not inform him of the condition of Mrs. Donaldson. It allowed the case to go to litigation and then informed him that since there was a contingent liability beyond the coverage of his contract he was free to employ his own counsel. This Court said what it thought about that on the first appeal. For no good cause shown, counsel for the Company failed in their primary duty to preserve Smoot's appellate rights either as to the process issued for him when he was out of the Country or as to an appeal from the original judgment rendered against him. When the damage suit came to trial, counsel for the Company put two doctors on the witness stand, knowing that they had never seen x-rays of the injured party and knowing further that their testimony was harmful instead of helpful. Then, as the verdict neared, counsel for the Company told the plaintiffs not to be concerned about a judgment in excess of coverage for they had already put Smoot on notice about that. It then paid the $10,000 into Court, leaving Smoot, as he testified and as the jury must have believed, in a position which lost his home and destroyed his credit. Under this mountain of unfavorable facts the jury was warranted in finding as it did.

The Judgment of the District Court is in all things

Affirmed.

AINSWORTH, Circuit Judge (concurring in part and dissenting in part):

I agree with the able opinion of the majority as to affirmance of all awards made by the jury in this case except those for (1) Punitive Damages in the sum of $10,000 and (2) Attorney's Fees equal to 50 per cent of all damages (i. e., the sum of $21,929.20 as attorney's fees) awarded by the jury. As to these, I respectfully dissent.[1]

### Punitive Damages

Georgia law authorizes the imposition of punitive or exemplary damages where there is affirmative evidence of facts showing wilful misconduct, malice, fraud, wantonness or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Mills v. Mangum, 107 Ga. App. 614, 131 S.E.2d 67, 69 (1963); Central of Georgia Ry. Co. v. Sowell, 3 Ga.App. 142, 59 S.E. 323 (1907).[2] Even gross negligence will not alone authorize the recovery of punitive damages. Southern Ry. Co. v. O'Bryan, 119 Ga. 147, 45 S.E. 1000 (1903). Appellee's brief (p. 34) states the Georgia rule of law authorizing punitive damages in part as follows: "Wantonness as authorizing exemplary damages does not mean necessarily malice, but a reckless disregard of the rights of others," citing Charleston & W. C. Ry. Co. v. Elmurray, 16 Ga.App. 504, 85 S.E. 804 (1915).[3]

---

1. The jury made total awards to plaintiff-appellee in this case as follows:

| | |
|---|---|
| Special Damages (the excess of the Donaldson judgments over the policy limits) | $23,858.40 |
| General Damages | 10,000.00 |
| Punitive Damages | 10,000.00 |
| Attorney's Fees | 21,929.20 |
| Total | $65,787.60 |

These were the same amounts sought by plaintiff in his pleadings, as amended.

2. The applicable Georgia statute authorizing punitive damages is Georgia Code Ann. 105–2002. See also Beverly v. Observer Pub. Co., 88 Ga.App. 490, 77 S.E. 2d 80 (1953).

3. The trial judge charged the jury in the instant case on the question of punitive damages as follows:

"In connection with the claim for punitive damages, I charge you that in order for the plaintiff to recover punitive damages in this case, as the Court in-

The evidence showed bad management of the case, and lack of prudence in its handling, but there was no evidence of wilfulness or intentional disregard of the insured's rights. In my view, it falls far short of wilful misconduct, malice, fraud, wantonness or oppression so as to justify an award of punitive damages. I do not disagree with the summary of facts in the majority opinion, but these facts will not fairly support an award for punitive damages under Georgia law. Accordingly, I would have granted the defendant-appellant's motion for judgment n. o. v. as to the award of punitive damages.

### Attorney's Fees Equal to 50 Per Cent of All Damages

Georgia law on the subject is succinctly stated in Dodd v. Slater, 101 Ga.App. 358, 114 S.E.2d 167 (1960), as follows:

> "Attorney's fees are not usually allowed as an item of damages except in those cases permitted by statute. Such fees are not a part of punitive or vindictive damages, but stand alone and are regulated by Code § 20–1404 which provides: 'The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.' The courts construe this section to apply to torts."

In the instant case the jury found both negligence and bad faith on the part of the defendant insurance company and allowed attorney's fees equal to 50 per cent of the total award for special, general and punitive damages. This was undoubtedly a proper case for allowance of attorney's fees, but I would hold that the fees awarded are excessive and the appellant's motion for a new trial as to this award should have been granted.

The trial judge instructed the jury on the question of attorney's fees in part as follows:

> "I charge you that any award of attorneys fees in this case should be determined on a *quantum meruit basis*, irrespective of any contract which may exist between the plaintiff and his attorney as to the amount of such fees. Now, quantum meruit simply means that the attorneys fees should be determined *on the basis of what would be a reasonable fee for the work performed* under the circumstances of the particular case." (Emphasis supplied.)

Though the evidence shows that plaintiff's counsel had a 50 per cent contingent fee contract with his client, counsel expressly states that he was not suing upon any contingent recovery but for attorney's fees in the sum equal to 50 per cent of all other damages prayed for.[4]

In a colloquy with the Court at the close of plaintiff's case, his counsel, Mr.

---

terprets the law of the State of Georgia, this requires that the plaintiff prove by a preponderance of the evidence that the defendant insurance company was guilty of wilful misconduct or malice or fraud or wantonness or oppression or that the company was guilty of that entire want of acre which would raise a presumption of a conscious indifference to the consequences. In this regard, you cannot as a matter of law return a verdict for punitive damages against the defendant insurance company unless you find that company either through its attorneys or adjusters or other agents was guilty of wilful misconduct and/or malice and/or fraud and/or wantonness or oppression and exercised an entire want of care in ut-

ter disregard of the rights and consequences to the plaintiff, Sergeant Smoot, and if the plaintiff fails to prove such wilful misconduct and indifference to the rights of the plaintiff, then the plaintiff is not entitled to recover punitive damages."

4. Counsel for plaintiff-appellee states the proposition in his brief (pp. 35–36) as follows:

"We are confident that this court will read the amended prayers carefully. And when it does, it will find that the prayers are not predicated upon any contingent recovery. Appellee prayed for attorney fees 'in a sum equal to fifty (50%) per cent of all other damages  *  *  * prayer for.' Not fifty (50%) per cent

Kitchings, also stated in part: "It is under this statute [Georgia Code Section 20-1404] that attorneys fees in the 'Crawford' case are worth—where attorneys fees are allowed such fees are to be determined *on quantum meruit basis,* and this is true irrespective of the contract between the plaintiff and the plaintiff's attorney as to the amount of such fees." (Emphasis supplied.) Defendant objects to any award of attorney's fees whatsoever, but also contends that the Georgia Code provision in question does not contemplate contingent or percentage fees as a proper measure of such compensation.

All counsel agree that attorney's fees should be determined on a quantum meruit basis, that is, on a reasonable value of the services, predicated upon the time spent, the issues involved and other

factors normally used when fixing a just and proper fee. Despite this view of the law by the parties and the Court, the evidence produced by plaintiff to support the claim for attorney's fees was that of four Georgia attorneys who testified that in their opinion a *contingent* fee contract calling for 50 per cent of recovery was reasonable.[5] The evidence, therefore, was predicated on a contingent fee contract of 50 per cent of the total damages, and there was no evidence based on quantum meruit as the Court and counsel for both sides had considered legally proper. In my view, an award of 50 per cent of the total damages as an additional amount for attorney's fees was unwarranted and excessive under Georgia law and under the Court's instructions. The proper measure should have been on a quantum meruit basis

of whatever the jury may elect to award and not fifty (50%) per cent of the total recovery in accordance with counsel's contract introduced in evidence but a sum equal to fifty (50%) per cent of the other sums stated in the prayers which under any circumstances amounted, at the time of the trial, to the specific sum of Twenty-one Thousand Nine Hundered Twenty-Nine and 20/100 ($21,929.20) Dollars."

5. *Attorney Perry Brannen testified as follows:*
"Q. Mr. Brannen, are you familiar with the case of Harvey Thomas Smoot, Jr., vs. State Farm Automobile Insurance Company?
"A. Well, Mr. Kitchings, I think I am to some extent from having reviewed a portion of your file and having seen a resume prepared by you.
"Q. I see. And, sir, from your examination of the file and the record in the case and from your experience as a practicing lawyer in this locality, would you testify that a contingent fee of fifty percent of recovery would be either reasonable or unreasonable, in your opinion?
"A. In this case, I would say that it was reasonable."
Attorney E. A. Friedman testified as follows:
"Q. Mr. Friedman, have you become familiar with the law suit entitled Harvey Thomas Smoot, Jr. vs. State Farm Automobile Insurance Company?
"A. Certainly not as familiar as you, but to some extent, as a result of con-

versations with you and the result of reading of certain portions of the case and resume which you submitted to me.
"Q. Sir, in accordance with your experience as a practicing lawyer in this community and in accordance with your knowledge of the case at hand, would you testify that the attorneys fees in this case would be reasonable on the basis of a contingent basis of fifty per cent of the recovery, would that be a reasonable attorneys fees?
"A. In my opinion in this case, that would be a reasonable attorneys fees."
Attorney Aaron L. Buchsbaum testified as follows:
"Q. Mr. Buchsbaum, have you become familiar with the record and file in the case of Harvey Thomas Smoot?
"A. Not with the entire record, but with a summary of it, yes.
"Q. I see. From your experience as a practicing attorney in this locality and from your knowledge of the case we are talking about, would you testify whether or not, in your opinion, a contingent fee contract calling for fifty percent of recovery is a reasonable fee?
"A. I would say that it is reasonable."
Attorney David H. Fritts testified as follows:
"Q. From your experience as a practicing attorney in this community—well, I will ask you first, have you become familiar with the case of Harvey Thomas Smoot vs. State Farm Automobile Insurance Company?

and not on a contingency of 50 per cent. Since plaintiff's evidence supported only an award of a 50 per cent contingent fee, the motion for a new trial filed by defendant should have been granted as to this item and proper proof adduced as to the value of the legal services performed.[6] There is no doubt that the services were long, detailed and valuable, but the award of 50 per cent should not stand under the circumstances of this case, and this issue should be retried, with proper legal proof as to the reasonable, actual value of the services.

I, therefore, respectfully concur in part and dissent in part.

"A. You have discussed it with me during the past five or six years.

"Q. Have you had occasion to become aware of the appellate work that has been done in this case?

"A. Yes, sir, some of it, not to any great detail, but some of it.

"Q. Sir, do you feel that you can testify, from your knowledge of the case that has been pending over these years, and from your experience as a practicing attorney in this community, can you testify whether or not a contingent fee basis of fifty per cent of all damages recovered, or fifty percent of the recovery is a reasonable attorneys fees?

"A. I think probably it is reasonable under the circumstances of the case."

6. It is obvious that the jury knew that the plaintiff had a 50 per cent contingent contract with his attorney and simply added this amount to its award without reference to whether the fee was fair or reasonable and in the face of the instructions of the Court that the fee should be established not on the basis of the contract between the parties, but on a quantum meruit or reasonable fee basis for the work performed. Its action was not, therefore, an exercise of discretion but an automatic, unquestioned acceptance of a contractual fee arrangement.