**Harvey Thomas SMOOT, Jr., Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 18815.

United States Court of Appeals
Fifth Circuit.

Jan. 25, 1962.

Alton D. Kitchings, Savannah, Ga., for appellant.

Alex A. Lawrence, Luhr G. C. Beckmann, Jr., Kirk McAlpin, Bouhan, Lawrence, Williams, Levy & McAlpin, Joseph Young, Jr., Hitch, Miller & Beckmann, Savannah, Ga., for appellee, State Farm Mutual Automobile Ins. Co.

Before BROWN, GEWIN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal tests the correctness of the dismissal of the complaint brought by an Assured to recover from his automobile Insurer the excess of the damage suit judgment over the face amount of the policy. Concededly this was done in the face of formal allegations which satisfied, at least, the Georgia good faith test. No trial in the usual sense has yet been had, and the Insurer advanced no affidavits demonstrating that there was no genuine issue of fact. All was done on the basis of the complaint, expanded as it was by annexed exhibits which ran the full gauntlet of the alphabet (and more) and covered practically all of the state damage suit trial record of pleadings and evidence plus copies of medical reports received by the Insurer in advance of trial.[1]

All the trial Court had before it was the complaint and the Insurer's motion to dismiss for failure to state a claim. That is what was heard, considered and acted upon. The judgment was one of dismissal for failure to state a claim. So far as we can understand, no thought or mention was made of summary judgment. Since it was candidly recognized on oral argument before us that, at the time of the submission to the trial Court, it was not the intention or purpose of either or both of the parties that the case be tried on its merits by the Judge without a jury, it is now acknowledged that the judgment flowing from this somewhat curious procedure can be justified only so far as it meets the requirements of a summary judgment under F.R.Civ.P. 56 and 12(b) and (c), 28 U.S. C.A.[2]

---

1. The annexed exhibits ran from "A" through "X" plus many interlarded double letters, e. g., "SS," "UU," "TT," etc. and all comprise over 160 pages of foolscap including almost 60 pages of state trial court testimony in what Georgia calls the Brief of the Evidence.

2. If, on a motion to dismiss "for failure of the pleadings to state a claim upon which relief can be granted," or "on a

The Insurer, properly undertaking as appellee to preserve its victory, is quite correct in asserting[3] that affidavits, as such, proffered normally by the moving party are not indispensably required where exhibits annexed to a plaintiff's complaint (and hence incorporated within it, F.R.Civ.P. 10(c)) demonstrate that the contention of the party is something distinctly different from the barebones formal allegations which are to be both brief and succinct, F.R.Civ.P. 8(e) and tested by the broad, liberal concept articulated recently in Conley v. Gibson.[4] There is thus occasionally a tactical, if not strategic, risk in a party's voluntarily abandoning the notice pleading concept of the Federal Rules. But it is essential to bear in mind that no less than in the traditional motion for summary judgment with supporting affidavits[5] proffered by the moving party, the pleadings as thus expanded by annexed materials must demonstrate that there is no genuine controversy on a material fact.[6]

It is here that the trial Court erred. And analyzing it from this vantage eliminates considerably any detailed discussion of the "facts" so cumbersomely alleged but which, despite their prolixity, were determined to be "deficient."

Undercutting all other errors was the basic approach that, since the action is essentially one in tort and not on the insurance contract itself, the Assured, as a legal proposition, had sustained no damage despite the assumed breach of duty by the Insurer because the complaint did not allege that he had paid the excess damage or any part of it.[7] The Insurer successfully urged these Georgia cases in its support. Williams and Templeton v. Brewer, 1955, 93 Ga.App. 603, 92 S.E.2d 586; Davis v. Johnson, 1955, 92 Ga.App. 858, 90 S.E.2d 426; Jones v. Wright, 1917, 19 Ga.App. 242, 91 S.E. 265. It was this conclusion which, so the trial

---

motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." F.R.Civ.P. 12 (b) (c).

3. The Insurer cites Dyal v. Union Bag-Camp Paper Corp., 5 Cir., 1959, 263 F. 2d 387; 2 Moore, Federal Practice, § 10.-06 at 2016; and 6 Moore, Federal Practice, § 56.17 [31] at 2222.

4. " * * * [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests * * *." Conley v. Gibson, 1957, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80.

We have phrased it and rephrased it many times. A motion "to dismiss * * * should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim * * *." Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264, 265.

5. This includes, of course, all other material permitted under F.R.Civ.P. 56(e).

6. See the Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, October 1961, issued by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. The Amendments as to Rule 56, while specifically requiring controverting affidavits, etc., nonetheless recognize that there may yet be cases in which even without controversion summary judgment cannot be granted. See pp. 39–42 and especially Advisory Committee's note p. 41. This report has been reprinted in Vol. 28 of F.R.D. (Advance Sheets, No. 3), insert pp. 1–37 at 25–26.

7. The papers did show that the two final judgments in the companion cases aggregating $26,902.83 (exclusive of interest) were rendered for the husband and the injured wife and the subsequent payment by the Insurer of the sum of $10,-372.71 into the registry of the Court representing the policy limits plus interest on the judgment until the date of that payment.

Court expressly declared, made the count —otherwise sufficiently setting out the Georgia good faith concept—insufficient as a matter of law. But oddly enough the Assured's allegations [8] on this phase stood unchallenged save by the Insurer's formal denial in its answer. None of the bundle of multitudinous annexed papers remotely touched this. Consequently, at this stage at least, the Assured had the full benefit of Conley v. Gibson, note 4, supra. Therefore, the only way this holding which is so basic to the final judgment of dismissal with prejudice may be justified is for us to determine that under Georgia law actual payment of the excess is necessary. Conversely, we must hold that it is not enough that the Assured has property, real and personal, subject to execution and that his credit, personal or business, is jeopardized by the ubiquitous judgment liens.

Of course we are bound by Georgia law such as we can, with sometimes dim *Erie* light, National Surety Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102 at 106–107, make out. And where, as is true here, there are no Georgia cases to be found, we must, as a Georgia court, fashion the rules knowing full well, of course, that what we say is the Georgia law may soon be renounced when and as the first *Erie*-indicating Georgia court speaks.[9] Here that means choosing between two different camps.[10]

To the reasons advanced by earlier cases we would add these and re-emphasize others in support of the rule that actual payment is not essential. The nature and purpose of the particular insurance contract is itself significantly relevant. Unlike many earlier forms in automobile insurance, as well as contemporary policies as to some other risks, this policy was not one for "indemnity." It expressly bound the Insurer "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * *" bodily injury, death and injury to property. Casting the insurance in this form was undoubtedly a response to the practical needs of individuals or business firms. Jewelers Mutual Ins. v. Balogh, 5 Cir., 1959, 272 F.2d 889, 892. Few will have resources to pay initially large judgments or amounts required to compromise risky claims. Even the Insurer's stated obligation to reimburse (i. e., indemnify) would not eliminate the frequent likelihood of crippling jeopardy to one's business or personal financial sta-

8. The complaint alleged:
 Paragraph 19: "Petitioner shows that he has been threatened with execution against the equity in his home, automobile, and other personal effects and * * * he called upon the company [Insurer] for help and relief and demanded of the company the damages caused * * *."

9. See, e. g., National Surety Corp. v. Bellah, 5 Cir., 1957, 245 F.2d 936, which the Texas Supreme Court expressly declined to follow. Truck Ins. Exchange v. Seelbach, Tex.Sup.Ct., 1960, 339 S.W.2d 521, 525. In Food Fair Stores, Inc. v. Trusell, Fla.Sup.Ct., 1961, 131 So.2d 730, 733, the Florida Supreme Court gave our Pogue v. Great Atlantic & Pacific Tea Co., 5 Cir., 1957, 242 F.2d 575, a somewhat similar treatment.

10. In Dotschay, etc. v. National Mutual Ins. Co., 5 Cir., 1957, 246 F.2d 221, we described it this way:
 "The Florida Supreme Court has not decided the question of whether an insured's right of action to recover damages for a breach of that duty accrues only upon his payment of the excess judgment and decisions of that question from other states are in conflict. We do not find it necessary to decide that question in advance of the State courts, for the jurisdiction of the federal district court was more elastic than simply to award damages. It could declare the rights of the parties, and grant further necessary or proper relief." 246 F.2d 221 at 222. To that we append this footnote:
 "*Payment not a prerequisite:* Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785; Schwartz v. Norwich Union Ind. Co., 212 Wis. 593, 250 N.W. 446.
 "*Payment required:* American Mutual Liability Ins. Co. of [Boston] Mass. v. Cooper, 5 Cir., 61 F.2d 446, 448; State Automobile Mut. Ins. Co. of Columbus, Ohio v. York, 4 Cir., 104 F.2d 730; Dumas v. Hartford Acc. & Indemnity Co., 92 N.H. 140, 26 A.2d 361. See also, Annotation 40 A.L.R.2d 190, et seq."

bility. Since the present suit rests on the assertion that the Insurer failed to use due care, or was guilty of bad faith, in the execution of these contract provisions, it seems certainly relevant that this intrinsic nature of the insurance contract be kept in mind in determining damages. What is foreseeable is traditionally important. For a tortious nonperformance of a contract whose terms take into account the practical inability or difficulty in raising funds to discharge large damage claims, it is surely within the realm of reasonable anticipation that damage of this very kind will occur. And, of course, this is no theoretical matter. So long as this judgment remains outstanding as a lien on the Assured's property he is thwarted in a disposition of it. If proper procedural steps are taken, new property likewise comes under the pervasive weight of the lien. And all the while, of course, credit resources are imperiled—a result even more inescapable if, as the Insurer now suggests, the victim of its assumed neglect must take bankruptcy.[11]

■■ Finally, this ignores, as is so frequent the fact that where there is no default decree, the judgment to be awarded in the Assured's suit is not to be measured by the formal prayers for relief. The scope and nature of the relief depends on the facts established, F.R.Civ. P. 54(c). Consequently, as a minimum, the Assured is entitled to a declaratory judgment or some other suitable, even though perhaps conditional, relief. Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139 at 145; Sax v. Sax, 5 Cir., 1961, 294 F.2d 133, 139; Dotschay, etc. v. National Mutual Ins. Co., supra, 246 F.2d 221 at 223.

■ Another basic contention of the Insurer should likewise be put to rest. In spite of the outright promise to "defend any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent * *," the Insurer now insists that it has no responsibility for damage sustained by the Assured even if it should be caused by legally culpable neglect or bad faith on the part of the attorney supplied by it to maintain the defense. In other words, the Insurer asserts that its duty is fulfilled by selecting competent counsel whose acts thereafter are that of one akin to an independent contractor. The cases urged by the Insurer do not support any such view. The duty to defend is an important and frequently distinguishable part of the insurance contract. American Fidelity & Casualty Co. v. Pennsylvania Threshermen, 5 Cir., 1960, 280 F.2d 453. Those whom the Insurer selects to execute its promises, whether attorneys, physicians, no less than company-employed adjusters, are its agents for whom it has the customary legal liability.[12]

■ So far then, as Count two is concerned—this stated the claim in terms of the good faith doctrine[13]—affirmance

11. Besides the none too easy question whether the particular tort claim is of a kind that is subject to discharge in bankruptcy, there are further acute factors which demonstrate that taking bankruptcy is itself a damage, e. g., costs, attorney fees, surrender of much property otherwise exempt from local execution, and the like. Cf. Harris v. Standard Accident & Ins. Co., 2 Cir., 1961, 297 F.2d 627; certiorari denied 82 S.Ct. 875, 7 L.Ed.2d 847.

12. The Assured cites among many cases. Home Indemnity Co. v. Snowden, 1954, 223 Ark. 64, 264 S.W.2d 642; Anderson v. Southern Surety Co., 1920, 107 Kan. 375, 191 P. 583, 21 A.L.R. 761; Douglas v. United States Fidelity & Guaranty Co., 1924, 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477; United States Guarantee Co. v. Liberty Mutual Ins. Co., 1943, 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632; Wisconsin Zinc Co. v. Fidelity & Deposit Co., 1916, 162 Wis. 39, 155 N.W. 1081; Ballard v. Ocean Accident & Guarantee Co., 7 Cir., 1936, 86 F.2d 449; Dumas v. Hartford Accident & Indemnity Co., 1947, 94 N.H. 484, 56 A.2d 57; Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc., Tex.Civ.App., 1948, 215 S.W.2d 904.

13. See Hall v. Preferred Accident Insurance of New York, 5 Cir., 1953, 204 F.2d 844, 140 A.L.R.2d 162.

comes down to the proposition that the bundle of annexed pages demonstrated as a matter of law that the Insurer had exercised good faith in the defense even though the event (the judgment in the damage suit) turns out to be worse than anticipated. The allegations were quite sufficient to charge want of good faith in rejecting settlement offers within the policy limits and generally in the handling of the defense. Were such allegations reduced in their sufficiency by the annexed exhibits? The trial Court implied the contrary and we say expressly they were not.

With all of this bulk, the annexed papers simply did not cover some aspects. Included were a few medical reports which the Insurer had received at various times prior to trial as well as the court testimony of doctors appearing for the plaintiff and defendant in the state court damage suit. But none of these papers undertakes to translate what the medical reports mean either in terms of what would be considered a reasonable settlement value on the claim or what an Insurer acting in the good faith exacted by Georgia standards would, or would not, conclude as to the course of action to be followed in settlement or trial.

We do not, of course, purport here to pinpoint the kind or type of evidence which is to be used on a trial, but it is helpful to recall the nature of this suit against the Insurer. It is, to be sure, a sequel to the state court damage suit. But it is not *that* damage suit. The question under the good faith doctrine is whether in the light of these developments the Insurer acted in good faith in failing to settle within the policy limits. By its very nature that question encompasses the more specific ones concerning the reasonable valuation of the case, whether, at each stage, proposed settlements were rejected consciously in terms of deliberative judgment evaluation or because of other or no reasons. The conduct under inquiry is no longer the simple one of the driver of the assured vehicle. It is now the action of the Insurer in the light of the conduct of its driver-assured, the probable medical evidence, and the like.

The allegations were formally quite adequate to state the claim. The papers annexed do, of course, bear on what a good faith insurer ought to have done in the face of such developments. But the papers are silent as to how or in what manner such developments were in fact evaluated by the Insurer or, for that matter, whether they were ever even seriously considered. This vital point was not covered. Hence, the papers failed to meet the requirements of F.R.Civ.P. 56 that there be no "genuine issue as to a material fact."[14] In addition, at least one medical report received by the Insurer near the eve of trial from the expert called in by its examining physician raised substantial questions concerning the severity of the lady's injuries. To be sure, this impression is colored by his subsequent court testimony which shows persistent acute pain. This, the doctor acknowledged, was the probable origin of the disabling, emotional consequences. But at least at this stage, it is permissible for the plaintiff under the liberal rules of pleading conscientiously to assert that what the doctor so plainly testified shortly after his formal report was what he meant, or at least knew, and that reasonable consultation with the doctor by trial counsel or other adequate preparation would have revealed the likely damaging testimony making acceptance of the settlement offers in the neighborhood of $7,-900 a matter of imperative necessity.

Two other somewhat peripheral matters must first be dealt with. The first is the contention that the Insurer formally notified the Assured that since the demands exceeded the policy limit, the Assured had a right, at his expense, to retain his own counsel. Just

---

14. Rule 56(c) " * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * *. * "

what relevance this had at this point where the matter is still in the stage of jousting on the pleadings, we are not quite sure. Obviously, this does not reduce the absolute obligation to exercise good faith (or absence of negligence as the local law specified) in the defense promised by the policy. The defense to be offered is "to defend any suit against the Insured alleging such injury * * *." Defense is not inexorably tied into either an actual, ultimate payment or the amount of it. American Fidelity & Casualty Co. v. Pennsylvania Threshermen, 5 Cir., 1960, 280 F.2d 453. No mention is made of claims within the policy limits. Next, the notice cannot shift to the Assured the expense of affording the defense which the policy promised him. That is what the Insurer agreed, at its own expense, to supply. Finally, it is not clear what separate counsel can do. The settlement, by the policy terms is, of course, left to the Insurer.[15] This means, of course, not at the unfettered whim of the Insurer but rather as good faith (or negligence as the local law prescribes) dictates a certain cause of action, settlement, trial, or the like. But apart from the Insurer's obligation to use the proper care (good faith or prudence as the case might be), little leeway is afforded to the so-called "independent" counsel acting for the Assured's excess interests. What is he to do? If he settles, or encourages settlement by direct contact with the damage suit plaintiffs or the plaintiff's counsel, he invites a serious challenge that the Assured has declined to cooperate with the Insurer whose counsel is opposed to the idea of settlement. Or worse, he is exposed to the charge that he has connived with the enemy. If his purpose is merely to demand in legalistic terms that the Insurer settle the case, it amounts to no more than what the Assured could do after the event with the result being determined, not by the fact a demand was made, but by the absence or presence of requisite good or bad faith, prudence or imprudence, as the case might be. In short, we see little purpose at this point in the assertion that because the Insurer called the Assured's attention to the obvious fact that he was sued in excess of the policy limits, the Assured could get the needed defense to his personal uninsured fortune by hiring another lawyer at his own expense. Indeed, it is difficult to see how, as the Insurer contends, this is a notice of antagonistic conflicting interests. The Insurer has one primary interest: to give that defense which the policy promised and to perform that promise in accordance with the standards of the local law (prudence or good faith). If its interests are antagonistic to the Assured, it has not fulfilled this promise. Its contract, with specified dollar limits, may perhaps put it in a somewhat difficult position. But always it must act with requisite care (good faith or prudence as local law spells out) toward the Assured's interest. It may, of course, properly consider its own interest, but it may never, never forget that of its Assured. Fidelity & Cas. Co. of N. Y. v. Robb, 5 Cir., 1959, 267 F.2d 473.

The other related matter concerns Count three alleging a failure properly to appeal after judgment. This is not to say that the appeal was not properly taken but that is the unanswered allegation at this stage of the proceedings. The Insurer persuaded the trial Court that there could be no liability whatsoever since the papers did not show that had the appeal been properly perfected, a different result would have been obtained.[16] But this is to read the permissible scope of proof under Conley v. Gibson (note 4, supra) too narrowly. This count served two distinctive pur-

---

15. The outright undertaking to defend found in Paragraph II (a) is followed, in the same sentence, by this: "but the company [Insurer] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;".

16. Reliance was placed primarily on Spangler v. Sellers, C.C.S.D.Ohio, 1881, 5 F. 882, followed in Maryland Casualty Co. v. Price, 4 Cir., 1916, 231 F. 397. See 45 A.L.R.2d 5, 55 (1956). See also 69 A.L.R.2d 690, 695 (1960).

poses. First, it was a further illustration of bad management and handling of the case demonstrating, so the Assured urged, that the Insurer acted both imprudently and in callous disregard of the Assured's interests, hence in bad faith. Next, and as a part of this, it was not, as the trial Court assumed, the simple contention that had the appeal been properly perfected, the judgment would have been reversed. Quite to the contrary, the theme is that whatever opportunity might have been afforded to make a post-judgment settlement of a bad case by the threat of time-consuming appeals vanished due to the failure to comply with certain Georgia appellate requirements. The papers did not foreclose all relevant issues on this and consequently summary judgment was inappropriate there as well.

 While most of the attention in the trial Court and in the briefs before us was directed to Count one— stated in terms of negligence—little need here be said. To the extent that the charge is specifically related to the asserted negligence in not accepting settlement offers, we think the situation is still so fluid under Georgia law that we should not undertake to freeze this in or out of the case. Our decision in Hall v. Preferred Accident Insurance Co. of New York, 5 Cir., 1953, 204 F.2d 844, 140 A.L.R.2d 162, does go a long way in suggesting that Georgia does not follow the negligence theory. But we are aware, whether counsel is or not, that our decision only tentatively declares the local law. A considerable body of Georgia law found in very pointed expressions in many cases [17] strongly indicates that Georgia may, if it has not already done

so, adopt the negligence concept as well. We need not decide at this stage whether this demonstrates strongly enough that Georgia has adopted this rule. See, Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199; Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139, 149; Greyhound Corp. v. Wilson, 5 Cir., 1957, 250 F.2d 509, 511; National Surety Corp. v. Bellah, 5 Cir., 1957, 245 F.2d 936, 941; Chaachou v. American Central Ins. Co., 5 Cir., 1957, 241 F.2d 889, 892; Kirby Lumber Corp. v. Laird, 5 Cir., 1956, 231 F.2d 812, 814. Rather this reflects again an instance in which a federal trial court should fully use the flexible machinery of an appropriate general charge with a verdict on special interrogatories. F.R.Civ.P. 49. In this way both the trial Court and, in the event of an appeal, this Court, can intelligently apply the contemporary local law with all of its intervening transmutations and undulations to articulate findings of the jury.[18]

If it is ultimately determined that the due care concept applies in Georgia, then for the reasons developed at length in considering Count two, the annexed papers did not rule out many pertinent and disputed issues of fact.

 And, in any event, the principal thrust of Count one is directed at actions other than rejection of settlement offers. There is the charge, nowhere answered or controverted in the annexed papers, that despite the array of distinguished, conscientious counsel supplied by the Insurer in the nominal defense of the damage suit, the whole thing was being directed by adjusters or other functionaries having insufficient judgment or ability either

---

**17.** The Assured strongly urges but the Insurer stoutly distinguishes the following Georgia cases: Francis v. Newton, 1947, 75 Ga.App. 341, 43 S.E.2d 282; Georgia Casualty & Surety Co. v. Reville, 1957, 95 Ga.App. 358, 98 S.E.2d 210; Reville v. Sullivan, 1955, 93 Ga.App. 23, 90 S.E.2d 609; Georgia Casualty & Surety Co. v. Reville, 1958, 97 Ga.App. 888, 104 S.E.2d 643; Leonard v. Firemen's Ins. Co. of Newark, N. J., 1959, 100 Ga.App. 434, 437, 111 S.E.2d 773.

**18.** See, e. g., Travelers Ins. Co. v. Busy Electric, 5 Cir., 1961, 294 F.2d 139 at 149; Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426, 1961 A.M.C. 1173, notes 4 and 9; Warren Petroleum Co. v. Thomasson, 5 Cir., 1959, 268 F.2d 5, 9, note 3; Clegg v. Hardware Mutual Casualty Co., 5 Cir., 1959, 264 F.2d 152; Fall v. Esso Standard Oil Co., 5 Cir., 1961, 297 F.2d 411.

to direct or to choose a prudent course of action or determine in intelligent good faith just what the case was worth in terms of the probabilites of success or failure in the event of trial. Nothing in Georgia law indicates that as to these and similar matters it will vary from the usual standard requiring that the contract be performed prudently, i. e., with that care which a prudent insurer would exercise.[19]

The short of this long opinion is that the case must be tried. It cannot be disposed of on the pleadings even amplified as they are. As we have so frequently pointed out, this does not necessarily mean that it must go all the way to the jury. Here we have had an incomplete trial on incomplete materials. When proof in the usual and receivable form is finally offered the trial Court must then determine whether the evidence as offered—not what it is predicted to be—meets the test. Stanley v. Guy Scroggins Construction Co., 5 Cir., 1961, 297 F.2d 374; Chapman v. Hawthorne Flying Service, 5 Cir., 1961, 287 F.2d 539; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523; Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492.

We should also make plain that in analyzing briefly why the papers did not at this stage establish the want of a genuine controversy over material issues, the evidence now to be offered or its sufficiency is not to be measured by what we have here said or unsaid, expressed or implied. We are certain of only one thing: by the nature of things evidence offered is bound to be different both in detail, emphasis, quality and quantity. We cannot predict what it will be, so from anything we have said here, the trial Judge cannot escape the continuing duty to judge it at each and every critical stage as the evidence actually unfolds before him. McGowan v. United States, 5 Cir., 1961, 296 F.2d 252; Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139; Fontainebleau Hotel Corp. v. Crossman, 5 Cir., 1961, 286 F.2d 926.

Reversed and remanded.

---

19. The insurance policy perhaps provides a basis for distinguishing the standard of performance as between settlement and general defensive actions. The promise to defend is stated in positive terms while that of settlement is couched in terms of discretion (see note 15, supra).