Frank GING, Administrator of the Estate of Father Bernard Morgan, Plaintiff,

v.

AMERICAN LIBERTY INSURANCE COMPANY, Defendant.

No. PCA 1551.

United States District Court
N. D. Florida,
Pensacola Division.

Dec. 5, 1968.

David H. Levin, of Levin, Askew, Warfield, Levin & Graff, Pensacola, Fla., for plaintiff.

William Fisher, Jr., of Fisher, Hepner & Hertz, Pensacola, Fla., for defendant.

## OPINION

ARNOW, District Judge.

The issue before the Court on Defendant's motion for summary judg-ment may be stated as follows: Can an insured recover from his insurer the amount of a judgment awarded against him in excess of the limits of his automobile liability insurance policy on the basis of the insurer's bad faith refusal to settle where the amount of the excess judgment is measured by a jury award for punitive damages?

This Court is of the opinion that he may not, and that Defendant's motion should be granted as a matter of law.

The undisputed facts upon which this case arose may be briefly stated as follows. On the night of June 2, 1962, a collision occurred between automobiles being operated by Billy James Martin and Father Bernard Morgan. There was ample testimonial evidence, of which the insurer of Martin, American Liberty Insurance Company, was aware, that the collision was caused by what a jury might determine was the gross negligence of Martin in the operation of his automobile. As American Liberty's investigator reported, there was a clear case of liability against their insured.

Two suits were brought against Martin as a consequence of the accident. The first, brought by a passenger in the Martin car for injuries sustained as a result of Martin's alleged gross negligence, was settled on the morning of the trial and is not here material. A second, subsequent suit was brought by Frank Ging, as Administrator of the Estate of Father Bernard Morgan, praying for relief in the nature of compensatory and punitive damages.

Settlement offers were made by both parties. Ging, through his counsel, originally demanded $50,000 to settle the case. However, apparently because of the financial prostration of the Defendant Martin, the offer was resubmitted as a demand for the monetary limits of the policy. American Liberty declined to accept such an offer. It pointed out that under its policy, it was not liable for punitive damages, and that, in its opinion, $3,500 would be a reasonable settlement figure for compensatory damages.

Counsel for Ging replied to this, stating that $3,500 was a cheap price to set for the life of a priest, and adding that, in Plaintiff's view of the case, the compensatory damages alone exceeded $10,000 if, in fact, that figure represented the limits of the policy. Once again, the policy limits were demanded.

Negotiations were eventually terminated, and the case proceeded to trial. At the close of the Plaintiff's case, the issue of liability was directed for the Plaintiff and the case was submitted to the jury on the issue of damages only. The jury verdict assessed Plaintiff's damages at $14,695 compensatory, which was reduced to $11,195 after remittitur, and $25,000 punitive damages.

American Liberty satisfied the compensatory damages award in full, but the punitive damage judgment is still outstanding. In consideration of a covenant not to levy against him on this judgment, Billy James Martin assigned any cause of action he might have against his carrier, American Liberty Insurance Company, for bad faith or negligent handling of settlement negotiations, to Frank Ging, Administrator of the Estate of Father Bernard Morgan.

Ging instituted the present suit, alleging that:

" * * * the defendant, American Liberty Insurance Company was guilty of bad faith and negligence in its handling of negotiations to settle the claim of the Plaintiff against Billy James Martin arising out of the accident of June 2, 1962, in which Father Bernard Morgan was killed. Specifically the plaintiff alleges that the defendant failed and refused to settle the damage suit aforesaid upon a reasonable offer of settlement made by the plaintiff as plaintiff in the damage suit, which offer was for settlement within the policy limits of Billy J. Martin's liability insurance coverage under the policy * * * "

Had American Liberty accepted the offer of Ging to settle the damage suit by paying over its entire policy limits, there would be no punitive damage award outstanding against Martin. However, it is also true that, except for the outstanding punitive damage judgment, American Liberty's decision not to accept Ging's offer of settlement—whether reached in good faith or not—caused no damage to Martin. The merger of these two facts precipitates the real issue in this case—is there any duty on the insurance company, in the conduct of settlement negotiations, to consider the interest of the insured in avoiding judgment on a non-covered item of damages?

■■ Decision on this point is governed by Florida law. Insofar as this Court is able to determine from exhaustive research conducted both by itself independently, and by able counsel for the respective parties, this precise question has never been treated by the courts of Florida or any Federal court applying Florida law. Therefore, the duty is upon this Court to decide the question in a manner consistent with the extant law of the state and as it conceives the courts of the state would resolve the issue if presented to them.

The logical point of departure in analyzing this problem is the policy issued by American Liberty to Martin, which contained the following standard provision defining the limits of the liability coverage:

"LIABILITY COVERAGE: The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages because of bodily injury or property damage,* arising out of the ownership, maintenance or use of the owned automobile, or, with respect to the named insured only, a non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or

suit as it deems expedient." (Emphasis added.)

■ Coverage provisions such as this in automobile liability insurance contracts have uniformly been construed to place three separate duties upon the insurer. Clearly it has the duty to pay sums which the insured becomes legally obligated to pay because of bodily injury or property damage. Manifestly, the duty of payment is delimited by the nature of the injury which results in a legal obligation upon the insured. The duty does not encompass damages as to which coverage is not afforded.

■ The second separate duty under the policy is that of defending against any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy. In establishing the horizontal scope of this duty, it is held that the duty to defend under the policy is only invoked where the allegations of the complaint, declaration, or other statement of a cause of action filed against the insured indicate that the basis of the action is within the ambit of the policy coverage. Bennett v. Fidelity & Casualty Co. of N. Y., Fla.App., 132 So.2d 788. "The effect of the policy is that the insurer undertakes to defend claims of the type for which it would have to make payment." American Fidelity & Cas. Co. v. Pennsylvania Thresherman & Farmers Mut. Cas. Co., 280 F.2d 453 at 458 (5 Cir. 1960). The obvious converse of the above rule is that, where the suit against the insured involves a claim as to which the insurance company has not afforded coverage, the contractual duty to defend is not involved. If, in matching the allegations of the complaint against the coverage provisions of the policy, the question of coverage is unclear, then, the "insurer may by timely notice to the insured, reserve its right to claim that the policy does not cover the situation at issue, while defending the action." Midland National Insurance Co. v. Watson, Fla.App., 188 So.2d 403. Columbia Casualty Co. v. Thomas, 20 F.Supp. 251 (N.D.Fla.1937). It is therefore too clear for cavil that the duty to defend is inexorably circumscribed by the coverage provision of the policy. In short, there is no duty to defend against a non-covered claim.

The third duty imposed upon the insurer is that of exercising good faith in the conduct of settlement negotiations. As the Supreme Court of Florida has recognized, this duty arises "not under the terms of the contract strictly speaking, but because of and flowing from it * * * " Auto Mutual Indemnity Company v. Shaw, 134 Fla. 815, 184 So. 852 (1939) at 859.

■ The company has the right to exercise its judgment in reaching the decision to contest rather than settle the claim. In the exercise of that judgment, it may properly consider its own interest but it may not ignore the interest of its insured. Fidelity & Cas. Co. of N. Y. v. Robb, 267 F.2d 473 (5 Cir. 1959).

But, to hold that the company must give fair consideration to the interest of the insured to sanctify its decision to decline an offer of settlement within the limits of the policy does not answer the question as to what interest of its insured must be considered.

American Liberty took the position in this case that it was under no legal obligation to consider the interest of Martin vis-a-vis punitive damages when it declined Ging's offer to settle for the policy limits.

■ It is clear that the insurer has no obligation to pay an award for punitive damages for several reasons. The policy itself excludes any such coverage since it limits its liability to damages resulting from bodily injury or property damage. Punitive damages cannot be considered within the scope of that coverage because, "in Florida, punitive damages are awarded beyond actual damages suffered and imposed as punishment to defendant and as deterrent to others." Nicholson v. American Fire and Casualty Insurance Company, 177 So.2d 52 (Fla.App.1965). Finally, and most importantly, insurance companies

are precluded under the public policy of Florida from assuming any obligation for indemnity for punitive damages. Northwestern National Casualty Company v. McNulty, 307 F.2d 432 (5 Cir. 1962); Nicholson, supra.

Of course, these decisions only establish that the insurer cannot be held under its policy to indemnify an insured against an award of punitive damages. They are not authority for the proposition that the insurer is under no duty to consider the possibility that punitive damages may be assessed against their insured when evaluating the case in settlement negotiations.

■ The attempt to apply light to the instant problem by analogizing from within the context of the insurer's duty to defend is also of limited value since punitive damages are not awardable because of the insured's dereliction but rather because of the degree of that dereliction. Such awards are not severable from the main action since they are predicated upon an award of actual damages, McLain v. Pensacola Coach Corp., 152 Fla. 876, 13 So.2d 221 (1943), and must bear some relationship to the actual damages. Crowell-Collier Publishing Co. v. Caldwell, 170 F.2d 941 (5 Cir. 1948).

■ Of course, the insurer cannot refuse to defend against an action seeking damages within the scope of its policy merely because punitive damages are also sought. But, on the other hand, it appears equally rational to conclude that merely because the defense of claims within the coverage of the policy would also incidentally benefit the insured by providing some defense to the claim for punitive damages, the insurer is under no obligation to prepare a defense oriented solely to that claim. This conclusion seems to be countenanced, inferentially at least, by the *McNulty* decision cited earlier. In that case, the Court held that the insurer had a duty to advise its insured of its position with respect to punitive damage, and that its failure to do so fully and timely would

render it liable for any damage resulting from the breach. The clear indication is that the insurer, having so done, has no further responsibility, much less any liability, respecting the punitive damage claim. This, of course, is not inconsistent with the view that the company may consider punitive damages as a non-covered item with respect to its duty to defend.

■ Since there is no duty to pay punitive damage awards, and no independent duty to defend against such awards, it follows that the scope of the insured's interest which the insurer must consider is likewise exclusive of punitive damage. Moreover, the rationale giving rise to the duty to act in good faith with regard to the interests of the insured buttresses this conclusion.

In the leading Florida case, the duty to exercise good faith was predicated upon the contractual transfer from the insured to the insurer of the right to investigate and settle the case against the insured.

"It is right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement * * * its exercise of this right should be accompanied by considerations of good faith * * *

"The company owes this duty to the insured because it has taken over all of the rights which formerly belonged to the insured, which could be exercised by him to place him in possession of the facts suggesting the possibility or probability of a recovery beyond the limit of the indemnity. Because the contract takes away these rights from the insured and transfers them to the insurer, the insurer owes to the insured the implied duty to so exercise them as to discover the possible extent of the liability and to communicate such fact to the insured." Auto

Mutual Indemnity Company v. Shaw, supra, 184 So. at page 857–858; citing from Hilker .v. Western Automobile Ins. Co. of Ft. Scott, Kan., 204 Wis. 12, 231 N.W. 257, 204 Wis. 12, 235 N.W. 413 at 414.

Many other decisions involving the breach of the duty indicate also that the rationale behind the implied duty is the relationship established by the contract. For instance, in Tully v. Travelers Ins. Co., 118 F.Supp. 568, the Court noted that "an insurer must act in good faith towards its insured in the defense and settlement of claims which, *under its policy*, it has the exclusive right to defend and settle, * * *" 118 F.Supp. at 569. (Emphasis added.) And in Springer v. Citizens Casualty Co. of N. Y., 5 Cir., 246 F.2d 123, it was said that the duty was laid upon the insurer by virtue of *the insurance contract between them.*

In point of fact, the insured is unable to protect himself against a claim covered by the policy without incurring the risk that the insurer will refuse to indemnify him for the amount of the settlement.

The difference between the instant situation and that giving rise to the duty is poignantly illustrated by the following excerpt from Smoot v. State Farm Mutual Automobile Insurance Co., 299 F.2d 525 (5 Cir. 1962). In discussing the effect of an insurer's letter to its insured advising him that he was being sued for an amount in excess of the policy limits and that he could retain independent counsel to represent him as to the excess, the Court, referring to the proposed "independent counsel" asked: "What is he to do?" It was then observed that:

"If he settles, or encourages settlement by direct contact with the damage suit plaintiffs or the plaintiff's counsel, he invites a serious challenge that the Assured has declined to cooperate with the Insurer whose counsel is opposed to the idea of settlement. Or worse, he is exposed to the charge that he has connived with the enemy. * * * In short, we see little

purpose at this point in the assertion that because the Insurer called the Assured's attention to the obvious fact that he was sued in excess of the policy limits, the Assured could get the needed defense to his personal uninsured fortune by hiring another lawyer at his own expense." at 532.

Such a letter could not serve as notice of antagonistic conflicting interest because:

"The Insurer has one primary interest: to give that defense which the policy promised * * *" *Smoot*, supra, 299 F.2d at 532.

In the instant case, however, the policy has only promised a defense to claims for compensatory damages. Punitive damages are uninsured under the policy, and uninsurable under the public policy of the State of Florida. This being the situation, there is clearly no surrender of the right to investigate and settle any claims for punitive damages.

The Court's question in *Smoot*, supra, has much more than merely rhetorical significance, when considered in the context of the proposed independent counsel retained to protect the insured with regards to the non-covered punitive damages. The insured and his independently retained counsel can attempt to avoid a punitive damage judgment by their negotiations with respect to that claim. Moreover, they can do so without risking an adverse reaction from the insurer because it is a non-covered item; hence, one as to which no delegation has been made.

Therefore, in the view of this Court, the conduct of Defendant, American Liberty, in declining to accept Ging's offer to settle in the original damage suit caused no legally compensable damage to its insured Martin. The question of the insurer's good or bad faith is never reached, since, with respect to the claim for punitive damages, there was no duty not to act in bad faith. The duty only exists with respect to the claims within the scope of the policy, and

as to those items Martin was not injured, because he was not subjected to an excess judgment.

In this Court's opinion, the decision reached here is not only consistent with, but dictated by, the public policy considerations discussed in the *McNulty* opinion. It places the full and final responsibility for reprehensible conduct squarely where it should be—on the shoulders of the actor. Any other rule would allow him to shift at least partial responsibility to his insurer in the guise of suits—such as this—for bad faith refusal to settle.

There is, of course, a duty upon the insurer in cases involving punitive damages to "inform the insured fully and timely before the trial of the company's position that the contract [does] * * not cover punitive damages." Northwestern National Casualty Company v. McNulty, 307 F.2d 432 at 443 (5 Cir. 1962). But that duty is not here involved. The record here is clear and uncontroverted that American Liberty satisfied this duty. Martin was so advised by American Liberty in early September, 1963, or more than 9½ months before trial. Plaintiff in this suit raises no contention respecting this, and seeks no recovery for damages for any alleged breach of this duty; obviously, any such claim, if presented, would be meritless.

In brief summary, the obligation of an insurer to exercise good faith to an insured arises from its contract of coverage and its right to take charge of any settlement negotiations. Where, as here, there is no contractual coverage and no right to control settlement negotiations, there can be no obligation on it of such nature.

In view of the foregoing, this Court concludes that there is no material issue of fact and that Defendant, American Liberty National Insurance Company, is entitled to judgment as a matter of law. Summary final judgment will be entered granting Defendant's motion and dismissing this action with prejudice, at Plaintiff's cost.