**Frank GING, Administrator of the Estate of Father Bernard Morgan, Plaintiff-Appellant,**

v.

**AMERICAN LIBERTY INSURANCE COMPANY, Defendant-Appellee.**

**No. 27336.**

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1970.

David H. Levin, Levin, Askew, Warfield, Graff & Mabie, Pensacola, Fla., for plaintiff-appellant.

William Fisher, Jr. of Fisher, Hepner & Hertz, Pensacola, Fla., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Because an insurance company actually did undertake the complete defense of its insured to a suit seeking both compensatory and punitive damages, the company had the duty of acting in good faith toward its insured as to the entire undertaking. The court below[1] erred in granting summary judgment based upon its premise that since the company owed no duty relative to punitive damages, it was free to act in bad faith toward its insured as to that element of the litigation. We reverse for a trial.

1. The opinion of the District Court appears at 293 F.Supp. 756 (N.D.Fla.1968).

The essential facts are outlined most favorably to the appellant.[2] On the night of June 2, 1962, a collision occurred in the State of Florida between automobiles being operated by Billy James Martin and Father Bernard Morgan. Suit was filed against Martin by the administrator of Father Morgan's estate, who is the Plaintiff-Appellant here. The complaint alleged that the accident happened because of Martin's gross negligence and sought both compensatory and punitive damages. American Liberty Insurance Company, which insured Martin, had investigated the accident and was aware of ample evidence to indicate that a jury could determine the collision had occurred as a result of gross negligence on Martin's part and that Father Morgan had survived the accident and incurred a brief period of pain and suffering which, under Florida law, would permit the recovery of punitive as well as compensatory damages. After a trial at which Martin did not appear, a jury awarded compensatory damages of $14,695.00 and punitive damages of $25,000.00. A post-judgment motion by American Liberty reduced the compensatory award to $11,195.00, which American Liberty satisfied in full, but no motion was filed as to the punitive damage judgment and it remains unsatisfied at this time.

Both before suit and before the trial commenced, a settlement offer and counter offers were exchanged by the administrator and the insurance company. The administrator originally demanded $55,000.00. American Liberty countered with an offer of $3,500.00. Because counsel for the administrator understood that Martin had only limited financial resources, an offer to settle "for the amount of the insurance coverage" was then submitted. All offers were specified to be or were treated as full settlement offers.

About a month after suit was filed, American Liberty wrote Martin stating that they were "defending the above lawsuit on your behalf" through named attorneys the company had selected; that the suit sought recovery for punitive damages which were not covered by the policy of insurance; that Martin could, at his own expense, retain counsel "to associate" with the lawyers employed by the insurance company in the preparation and trial of the case; that the company would cooperate with whomever Martin selected and that no action taken by the company in the course of the defense of the suit would be a waiver of the company's right to deny *payment* of any punitive damages which might be awarded. In correspondence before trial and after verdict, the insurance company expressly stated without reservation as to any element of the proceedings, both to Martin and to counsel for Father Morgan's administrator, that they represented not only the insurance company but also Martin, individually, in connection with the defense of the litigation.

The insurance company, its counsel and its adjusters realized that an award of punitive damages was a strong possibility but neither the company nor its counsel ever communicated to Martin this potential they recognized. Martin was not told about any offer of settlement until less than two weeks before the date set for trial and then only in a context indicating that the offer which the company had made was adequate.[3] Although Father Morgan's administrator had twice furnished the insurance company with

2. Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co., 392 F.2d 706 (5th Cir. 1968), cert. den. 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968).

3. The exact language was:
   "As to our evaluation of the case, we feel that the odds are great that the jury will find you liable for the accident. *However, the amount of damages that can properly be awarded under Florida law in this suit is quite limited.* An offer of $3,500.00 in settlement has been made. That offer has been rejected. The attorney for the plaintiff has stated that he will accept nothing less than the full amount of your insurance coverage."

extra copies of his letters offering to settle the entire litigation for the amount of the policy coverage with express requests to forward such letters to Martin, neither letter was furnished to Martin. Martin was never told that a contribution from him could be added to the insurance company's offer to effect a settlement. Martin was never advised that proof of his poor financial condition would weigh heavily in keeping any punitive damage award to a minimum. No attempt was made to have documentary proof at the trial to show Martin's financial condition. When Martin did not come from his home in Virginia to Florida for the trial, no continuance was sought. Martin received no word about the trial's outcome for five and one-half months.[4] In fact, the was not advised that a verdict had been entered against him in any amount until December 3, 1964, thirteen days before time for appeal would expire. On that date a letter went out to him stating that the portion of the unpaid judgment for which he was personally liable amounted to $25,000.00 for punitive damages and $1,060.00 (sic) for compensatory damages and concluded with the paragraph:

"If you intend to appeal from the judgment, your notice of appeal must be filed no later than December 16, 1964. You must, of course, retain your own attorney if you wish to file an appeal."

Martin did not perfect an appeal.

In consideration for a covenant not to levy on the punitive damage judgment, Father Morgan's administrator took an assignment from Martin of all of his rights against American Liberty and brought the present suit under the assignment, alleging the issuance of the policy of insurance, the wreck and the prior suit and judgment, and charging bad faith and negligence on the part of the insurance company in the following particulars: (1) failure to apprise Martin of settlement offers within a reasonable time after settlement had been made, (2) failure to warn Martin adequately of the likelihood and danger of a punitive damage verdict not covered by insurance, (3) failure to advise Martin of the outcome of the suit within a reasonable time, and (4) failure to conduct settlement negotiations in good faith. American Liberty answered denying the charges of negligence or bad faith and setting up as defenses that Martin's failure to cooperate both voided the policy and caused the large punitive damage verdict. American Liberty also attacked the validity of the assignment by a motion to dismiss the complaint, which motion was overruled. There is no cross-appeal here as to the court's action below in overruling this motion. Therefore, the validity of the assignment is not before the court on this appeal.

We rule here on the single issue of the propriety of the lower court's order granting summary judgment to American Liberty and dismissing this cause without a trial.[5]

Neither the district court nor the parties before us misconceived the standards fixed by Rule 56(c) of the Fed-

4. There were frequent communications between its counsel and American Liberty after judgment and before appeal rights expired. Counsel even urged the company to refuse payment of any part of the judgment on the basis that Martin's failure to attend the trial was a breach of his duty to cooperate, for which the company could refuse any payment, and pointed out that counsel could no longer represent the company because he would have to be a witness in the garnishment proceedings he anticipated would result. After these exchanges, trial counsel still reaffirmed to the administrator that he would continue to represent Martin "until * * * the time in which an appeal can be filed has expired".

5. The statement of facts is greatly abbreviated; it omits numerous issues which appear in the record before us. We make this observation to assure the litigants and the court below that we do not intend, by what we say here, to intimate any decision on any facet of the fact determinations which must be made as to the merits of the complaint and the defenses raised.

eral Rules of Civil Procedure limiting summary judgment to situations where the record shows that " * * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * *", or that State law can determine whether such material fact issues exist. Lighting Fixture & Electric Supply Co., Inc. v. Continental Insurance Co., 420 F.2d 1211 (5th Cir. 1969). Another basic premise that concededly governs this case is that Florida public policy does not permit an insurance company to insure the payment of punitive damages. Nicholson v. American Fidelity & Casualty Insurance Co., 177 So.2d 52 (Fla.App.1965); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962). The error in treating this record as one appropriate for summary disposition arose from the fact that it was not made clear to the court below that American Liberty actually undertook the defense of the entirety of the lawsuit filed against its insured, both as to compensatory and punitive damages. It knew that the attorneys that it employed were the only attorneys representing the insured; it acknowledged that these counsel actively represented both the insurer's and the insured's interests throughout the pre-suit period, preparation for trial, the trial and all post-judgment procedures.[6]

Under the record before us here it is unnecessary for us to make or intimate any holding as to whether a Florida insurer has a duty to undertake the defense of the punitive damage aspect of a single lawsuit seeking both compensatory and punitive damages for a covered accident.

█ Because this case must now be tried, we deem it appropriate to comment on two of our decisions cited in the District Court's opinion. The original opinion in Smoot v. State Farm Mutual Auto. Insurance Co., 299 F.2d 525 (5th Cir. 1962), does not support summary disposition here. To the contrary, the rationale of that original opinion and the subsequent history of that litigation [7] indicate that a trial should have been held. In *Smoot* a suit was filed by an insured to recover from his automobile insurer the amount by which a compensatory damage suit judgment exceeded the coverage limits of the policy, alleging bad faith refusal to settle within the policy limits. That case established that the duty to defend on an automobile insurance policy was an important and frequently distinguishable part of the insurance contract from the duty to pay a judgment.[8] It also declared the actions of the attorneys employed by the insurance company to furnish this defense to be the acts of the company.[9] *Smoot* pointed out that the mere giving of a

---

6. In its brief before this court American Liberty again assures us that this was their position, with the following assertions:

"Admittedly, an insurer in Florida has a duty to defend a suit against an insured arising out of a motor vehicle accident if the allegations of the complaint (as was true in this case) alleged the negligent operation on the part of the insured during the policy period. The defendant in this action honored that obligation by providing a defense to its insured, *both as to the compensatory and punitive damage claims set out in plaintiff's complaint.*

"During all of that correspondence [between insured and company counsel], much of which was not replied to by the insured, *counsel indicated he was de-*

*fending the cause in its entirety and recognized an obligation so to do,* despite the fact that, as Martin had been previously advised by the defendant as his carrier and subsequently by assigned counsel, under Florida law the company was not under any obligation to pay any punitive damage award and would decline to do so." (Emphasis supplied)

7. 337 F.2d 223 (5th Cir. 1964), 381 F.2d 331 (5th Cir. 1967).

8. *See also* American Fidelity & Casualty Co. v. Pennsylyvania Threshermen & Farmers' Mutual Casualty Insurance Co., 280 F.2d 453 (5th Cir. 1960).

9. The recent case of Hertz Corporation v. Ralph M. Parsons Co., 419 F.2d 783 (5th Cir. 1969), again enunciated this principle.

notice to the insured that he had been sued for an amount in excess of the dollar limit of his coverage did not operate to relieve the company from the duty to defend both the covered and excess claims in that lawsuit and to act in good faith toward the insured with regard to the entirety of that defense. Regardless of whether the fact that the problem in the present suit is different because it deals with punitive rather than non-covered or excess compensatory damages, a matter as to which we need express no opinion, no distinction can be made between the *Smoot* case and the actual facts which existed here showing that the insurance company undertook to defend its insured both as to compensatory and punitive damages. The duty to defend *as undertaken* in the present case was just as much a duty in solido as the duty defined in *Smoot*. *Smoot* stands for the principle that an insurance company—once having undertaken the defense of an action—may properly consider its own interests in conducting the litigation or settlement negotiations, but in so doing it may never forget the interest of its Assured. The same requirement of fidelity applies to the defense of Martin as undertaken here.

It is likewise true that Northwestern National Casualty Co. v. McNulty, *supra,* does not support summary disposition here. *McNulty* divined the *Erie* rule that Florida would hold an automobile liability insurance contract could not cover the payment of punitive damages. But the majority opinion pointed out that the average Florida insured could not know that his policy did not protect him on this feature of potential liability because there was no express exclusion of punitive damages in the policy language. In the light of this lack of definition in the policy itself, the court was shocked that the insurer had failed to expressly advise its insured on this subject and stated:

" * * * in the circumstances of this case the relationship between the parties created a duty on the insurance company to inform the insured fully and timely before trial, of the company's position that the contract did not cover punitive damages."

■ *McNulty* should not be read as declaring a rule that an insurer need *only* advise its insured that it will not pay any portion of a judgment assessed for punitive damage in order to be relieved from all further responsibility respecting the defense of that claim and from all corollary responsibilities which that duty to defend necessarily entails. *McNulty* defines a duty of fair and full disclosure between insured and his insurer. It therefore reinforces rather than foreshortens an insurance company's obligation to defend its insured where the company did not tell the insured that its defense of the litigation would not afford a defense for the punitive damage aspects thereof, but where to the contrary, it undertook to make an entire defense and still now insists that its defense as made covered all allegations of the complaint. The very same relationship which created an affirmative duty in *McNulty* to disclose the non-coverage of punitive damages equally demands a duty to disclose any intention on the part of the insurance company to refrain from furnishing a defense for a portion of the present lawsuit.

■■ We read the complaint in the case at bar as charging a breach of a single duty to defend Martin from all aspects of the litigation filed against him, a duty allegedly owned and assumed even prior to the filing of the suit by undertaking settlement negotiations and one which allegedly continued and was undertaken past judgment and up to the time when the possibility of appeal expired. If such a duty was owed or undertaken, it included apprising the client of settlement opportunities within a reasonable time after they were presented; it entailed the duty to warn the client of difficulties which the litigation posed for him wherever such difficulties were not included within the contract of indemnity; it included the duty to

advise the client of the outcome of the litigation and of any particular procedures which might lessen its financial impact upon him; and it included the conduct of settlement negotiations in good faith to the interests of the insured wherever those interests might be divergent from the interests of the insurance company.[10]

It is not necessary for us to decide— and we do not decide—whether the policy imposed a duty on the insurer to defend against a claim for punitive damages when it was joined with a claim for compensatory damages. It is sufficient for the purposes of the case at bar to hold that once having undertaken the defense of a non-covered claim, the insurance company is under an obligation to act in good faith toward its insured to the entire extent of its undertaking.

Reversed and remanded.

10. Brockstein v. Nationwide Mutual Insurance Co., 417 F.2d 703 (2d Cir. 1969). Cf. the frank, ingenuous actions of the insurer as to coverage and defense in Ma-son-Henry Press v. Aetna Life Insurance Co., 211 N.Y. 489, 105 N.E. 826 (N.Y. App.1914).